(No. 12033.—Judgment affirmed.)

H. FRED HUMPHREY *et al.* Plaintiffs in Error, *vs.* THE IN-
DUSTRIAL COMMISSION *et al.*—(JOHN RIORDAN, Admr.,
Defendant in Error.)

*Opinion filed October 21, 1918—Rehearing denied Dec. 5, 1918.*

1. WORKMEN'S COMPENSATION—*when injury is within scope of
Compensation act.* An injury to an employee in an industrial plant
caused by his being caught between the automatic gate and the floor
of a combination freight and passenger elevator is within the scope
of the Compensation act, where the employee had been taught to
use and was expected to use the elevator as occasion required, and
where, although the injury occurred during the lunch hour, the em-
ployees used the elevator in the same manner as in work hours in
going to and from the part of the building where they chose to
eat their lunch.

2. SAME—*statute does not require parents or lineal heirs to be
dependent on deceased.* To justify a recovery of compensation un-
der the Compensation act for accidental death of an employee it is
not necessary that the parents or lineal heirs shall have been de-
pendent upon the deceased for support, but it is sufficient if the
deceased employee leaves parents to whose support he has con-
tributed within four years prior to the time of his injury.

WRIT OF ERROR to the Circuit Court of Will county; the
Hon. ARTHUR W. DESELM, Judge, presiding.

MACCHESNEY, BECKER, ANGERSTEIN & ROLLO, for
plaintiffs in error.

FRANK J. WISE, and WILLIAM C. MOONEY, for defend-
ant in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

Leo Riordan, while in the employ of Humphrey & Sons
at Joliet, Illinois, on March 14, 1916, received injuries from
which he died on that day. John Riordan, his father, was
appointed administrator of the estate. The administrator
filed application for adjustment of claim with the Industrial
Board, in which he claimed compensation from Humphrey

& Sons for the death of his intestate under the provisions of the Workmen's Compensation act. On a hearing before the arbitrator an award was entered in favor of the applicant for the sum of $6 per week for 416 weeks. The Industrial Board, on review, entered an award for the sum of $5.77 per week for 416 weeks. This award was confirmed by the circuit court of Will county, and the presiding judge having certified that this is a proper cause to be reviewed by this court, H. Fred Humphrey and others, partners doing business as Humphrey & Sons, have brought the record here by writ of error.

But two points are urged for reversal: First, that the applicant did not establish that the death was due to an accidental injury arising out of and in the course of the employment; and second, that the applicant was not entitled to compensation under the act.

Leo Riordan, the deceased, lacked one month of being seventeen years of age at the time of the accident. He had been working for several weeks for plaintiffs in error at their plant. For the first ten days or two weeks he worked on a drill-press on the second floor of the plant. After that he was transferred to work under the foreman of the foundry, on the first floor. On the day he received the injury from which he died he was engaged in unloading a car-load of coke which was outside the plant. The plant consisted of a building three stories high. A combination freight and passenger elevator was located in the plant, which was operated by steam and ran from the first to the third floor. The elevator was not operated in an enclosed shaft. The entrance to the elevator was guarded on the second and third floors by automatic gates, which rose when the elevator was brought to the respective floors and lowered when the elevator left that floor. All employees of the plant were permitted to use this elevator as they desired and as occasion required. Immediately after his employment the deceased was instructed how to operate this elevator by Harry S.

Humphrey, one of the plaintiffs in error. The lunch hour at this plant was from 12 to 12:30 o'clock. The deceased lived too far from the plant to permit him to go home to his noonday meal, so he, with others of the employees of plaintiffs in error, brought his lunch with him and ate it at the plant. It was his custom to eat his lunch on the second floor of the building, and he ate it there on the day of the accident. About 12:15 o'clock P. M. on that day, and while the deceased was on the second floor eating his lunch, Samuel Bruner, one of the employees of the plaintiffs in error, stepped on the elevator, which was standing on the second floor, and went down on it to the first floor. He passed through the shop on that floor and went to the engine room. Immediately upon entering the engine room he heard the elevator running rapidly for a short time and then suddenly stop. Other employees upon the second and third floors heard a scream or groan at the same time, and upon going to the elevator they found the deceased wedged tightly between the automatic gate which operated on the second floor, and the elevator, just beneath the third floor. The elevator was run down almost to the second floor and the deceased extricated from his position between the gate and the elevator and taken to a hospital, where he died within a short time. No one saw the accident.

It is contended by plaintiffs in error that the deceased must have left the second floor by way of the stairway immediately after Bruner had taken the elevator to the first floor, and, arriving at the first floor after Bruner had left the elevator, got on the elevator, ran it up to the second floor and attempted to get off without stopping it, and was caught between the elevator as it ascended from the second floor and the descending gate. One witness testified that on various occasions he had seen this elevator running wild without anyone operating it, and the defendant in error advances the theory that after Bruner had taken the elevator to the first floor and left it, it started up without anyone in

charge; that the deceased saw it, and in attempting to get
on the elevator to stop it was caught between the elevator
floor and gate.  As the evidence discloses that the deceased
left his dinner pail and coat on a drill-press on the second
floor, the more reasonable theory would be that the deceased
went down to the first floor by the stairway and then de-
termined to go back to the second floor and put away his
dinner pail and secure his coat, or for some other purpose,
and got upon the elevator and ran it back to the second floor
and in some way got caught between the elevator floor and
the gate while the elevator was in motion.  It is immaterial
which of these theories may be adopted or whether any of
them are adopted.  The deceased was an employee of plain-
tiffs in error, and it is conceded that they were conduct-
ing such a plant as brought them within the provisions of
the Workmen's Compensation act and that they were operat-
ing under that act.  The deceased was taught to operate the
elevator when he entered the employ of plaintiffs in error,
and as an incident of his employment was permitted and
expected to use the elevator as occasion required.  The fact
that the accident occurred during the noon hour and while
the plant was not in operation has no bearing on the case.
The deceased was required to take his lunch to the plant
with him and was permitted and expected to eat it upon the
premises.  No particular place was assigned to any of the
employees to eat their lunch but each man was permitted
to eat it wherever he desired about the plant.  All the em-
ployees used the elevator during the lunch hour as they had
occasion to, just as they used it during the hours the plant
was in operation.  Whether the deceased was negligent in
his operation of the elevator or in attempting to get off
while it was in motion is immaterial.  He was permitted to
use this elevator as an incident of his employment and was
so using it.  Unless it could be shown that he deliberately
placed himself in this position of danger for the purpose
of taking his life the plaintiffs in error are liable under the

Workmen's Compensation act. There is nothing here to indicate that this was anything but an accident. The proof amply sustains the finding that the accident arose out of and in the course of the employment.

The proof discloses that the deceased, when in school, had worked on each Saturday at a grocery store, and that he always gave his wages, while so working at the grocery store and for plaintiffs in error, to his mother. The statute does not require that the parents or lineal heirs shall be dependent on the deceased, but it is sufficient if the deceased employee leave parents to whose support he had contributed within four years prior to the time of the injury. *Commonwealth Edison Co.* v. *Industrial Board, 277* Ill. 74.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*