JOSEPHINE MANZIANO ET AL., RESPONDENTS, v. PUBLIC SERVICE GAS COMPANY. PROSECUTOR.

Argued June 4, 1918—Decided November 29, 1918

Where, in a workmen's compensation case, there was proof only of the death and of the dangerous environment of the deceased, which furnished presumptive or circumstantial testimony of the manner of death, by a logical process of rational induction, based upon human experience, from which the reasonable inference of the existence of the satutory requirement was deducible, *i. e.,* that death arose out of and in the course of the employment, a conclusion, by the trial court. based upon such rational inference tantamount to legal proof of the facts, will not be disturbed.

On *certiorari* to the Essex Common Pleas.

Before Justices PARKER and MINTURN.

For the respondents, *Harry Heher.*

For the prosecutor, *Leonard J. Tynan.*

The opinion of the court was delivered by

MINTURN, J. The deceased was found dead, in a trench in the city of Trenton, which he had been employed to guard, and had been guarding during the night. He had been employed by defendant in another capacity during the day, and was put to work on two trenches which had been dug by defendant, in an effort to locate leaks in the gas main.

The following facts were inferable from the testimony.

The gas from the leaks permeated the atmosphere to such an extent that the odor of gas could be detected half a block distant. The intensity and volume of escaping gas made standing upon the trench embankment dangerous to employes. The men engaged by day at work in the trenches found existence there uncertain after the lapse of four or five minutes; and they therefore worked in relays, each company being taken out after four or five minutes in order to obtain fresh air by walking about, when they were taken back to relieve the men who had replaced them.

The maintenance of life in the trenches was impossible after six minutes therein, and the inhalation of fresh air before the expiration of that period of time alone preserved the vitality of the men. Those who worked in the trenches by day were not put to work there at night; the deceased was put to work there with instructions to guard the trenches; to keep the guard lights upon the embankments continuously lighted, and generally to protect the trenches from inconsiderate use or observation by the traveling public.

To assist it in this work, the defendant had carefully blockaded the trenches by an accumulation of dirt excavated therefrom, as well as by an accumulation of paving material

from the surface of the street and at each end by a temporary barricade of planking.

Four lighted warning lamps were suspended at the trenches, and those, as has been observed, the deceased was expected to watch and keep lighted.

The decedent had been seen by city policemen several times during the night, and they spoke to him of the coldness of the night and the need of an overcoat. He was last seen near the trenches by a patrolman a little after four A. M., and he was not seen again until his body was found asphyxiated in the trench about six A. M. He was found in a *quasi*-rising posture, nearly on his knees, with his head resting against the embankment as though engaged in an effort to extricate himself. When he was discovered one of the planks forming the barricade was down, and one of the lamps lay unbroken and extinguished on its side on the embankment. The cause of this disorder was not distinctly in evidence.

The petition was filed against defendant, under the provisions of the Workmen's Compensation act (*Pamph. L.* 1911, *p.* 134), and the trial court found for the petitioner, and this writ was allowed to review the correctness of the finding.

The brief of the defendant succinctly places the issue thus presented upon the insistence that "the trial court evidently considered that the evidence justified the inference that the decedent's death was accidental, and arose out of and in the course of his employment; but no attempt is made to explain why the evidence in this particular case justifies the inference."

The argument obviously is, and the brief so declares, that "the evidence must give a substantial support to the finding." If by this be meant that there must be direct *viva voce* testimony, tending to show the manner in which the deceased met his death, and that a rational inference cannot be drawn from proved facts and circumstances, the contention runs counter to the general rules of evidence, and to the doctrine established by the adjudged cases in this jurisdiction. Circumstantial or presumptive evidence has always presented a basis for deductive reasoning in philosophy, and in every walk

of life, as well as in the determination of legal questions, both civil and criminal.

Referring to the character and legal conclusiveness of such evidence, as a basis for the solution of civil causes, Mr. Best briefly, but comprehensively, defines it as "a mere preponderance of probabilities, and, therefore, a sufficient basis of decision." 1 *Best Ev.* 135; 1 *Greenl. Ev.,* § 15.

It is this preponderance of the aggregate probabilities, judicially termed the weight of evidence, which furnishes the legal standard of proof in civil causes. Discussing this department of proof, Blackstone declares that when a fact cannot itself be demonstrated, that which comes nearest to proof of it, is proof of the circumstances necessarily or usually attending it; this proof creates a presumption which is relied upon till the contrary is proved. 3 *Bl.* 371.

Such presumptions are more or less intuitive and are based as necessary logical deductions and generalizations upon the common experience of mankind from conceded facts.

Treating of the subject, Professor Greenleaf says: "They depend upon their own natural force and efficacy in generating belief or conviction in the mind, as derived from those connections, which are shown by experience, irrespective of any legal relations. * * * These merely natural presumptions are derived wholly and directly from the circumstances of the particular case, by means of the common experience of mankind, without the aid or control of any rules of law whatever." 1 *Greenl. Ev.,* § 44.

Further analyzing the subject, Mr. Best in his treatise states: "They not only form important links in a chain of evidence and frequently render complete a body of proof, which would otherwise be imperfect, but the concurrence of a large number of them may (each contributing its individual share of probability) not only shift the *onus probandi,* but amount to proof of the most convincing kind." 2 *Best Ev.* 577.

Explanations may be offered to answer the inquiry as to the manner in which the deceased came to be in the trench. Witnesses testify that he was carefully performing his duty

all night, until four o'clock in the morning, and therefore we may assume that he never left the scene of his employment; a presumption emphasized by the fact that his body was found on the scene of his work. The plank was down, the earth disturbed, and the light was out, and a reasonable inference may be drawn that, *ex necessitati,* inhaling gas all night, he approached the trench to light the lamp, or to do some other necessary act, when stupefied by the noxious odor, he lost his balance and fell into the hole, and was unable, by reason of the stupefaction, to extricate himself in time to save his life.

The necessary act of attending to a call of nature, apart and away from the scene of his employment, where the master had not furnished the necessary accommodation for the purpose, in reaching which distant place the servant was killed by a passing train, was held not to be so disconnected from his employment as to deprive his representative of the right of recovery. *Zabriskie* v. *Erie Railroad,* 85 *N. J. L.* 157; *affirmed,* 86 *Id.* 266.

In such an environment the natural presumption is that the deceased met death while engaged in his occupation. There was no evidence that between four and six o'clock in the morning he voluntarily entered the trench for any purpose, incompatible with his duty; nor was there evidence that he was *non compos* or abnormal and unable to appreciate and realize the necessary incidents of the danger which surrounded him, and to guard against the manifest and inherent perils of which he was enjoined to warn the public. In the absence of proof to that effect, the theory of suicide must be eliminated from the case, for the rule seems to be settled that where a person is found dead, the presumptions are that his death was natural or accidental, unless the evidence shows him to have been insane; that suicide will not be presumed, and that the fact of death in an unknown manner creates no such presumption. *Germain* v. *Brooklyn Life Insurance Co.,* 26 *Hun* 604; 29 *Cyc.* 235, and cases cited.

Illustrations of the application in this jurisdiction, of deductive reasoning from circumstantial testimony, are pre-

sented in *DeFazio* v. *Goldschmidt Company,* 87 *N. J. L.* 317; *Bryant* v. *Fissell,* 84 *Id.* 72; *Muzik* v. *Erie Railroad Co.,* 85 *Id.* 129.

In two of the cases cited there was proof only of the death and of the dangerous environment of the deceased, which furnished presumptive or circumstantial testimony of the manner of death, by a logical process of rational induction, based upon human experience, from which the reasonable inference of the existence of the statutory requirements was deducible, *i. e.,* that death arose out of and in the course of the employment.

The trial court having thus concluded upon a basis of rational inference, tantamount to legal proof of the fact, the eighteenth section of the Workmen's Compensation act (*Pamph. L.* 1911, *p.* 134) requires the affirmance of the judgment. *Bryant* v. *Fissell, supra; Sexton* v. *Telegraph Company,* 84 *N. J. L.* 85.

We have examined the exceptions to the court's rulings upon disputed testimony, and have concluded that the admission or rejection of the testimony, under the well-settled rule applicable to that character of proof, was entirely discretionary. *Alcott* v. *Public Service Co.,* 78 *N. J. L.* 482.

The judgment will therefore be affirmed.