## DEL VECCHIO ET AL. *v.* BOWERS.

No. 37. Argued November 13, 14, 1935.—Decided December 9, 1935.

*Mr. James E. McCabe* for petitioners.

*Mr. John H. Burnett,* with whom *Mr. Chapin B. Bauman* was on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This case involves the application of §§ 3 (b) and 20 (d) of the Longshoremen's and Harbor Workers' Compensation Act,[1] to the respondent's claim of compensation for the death of her husband, Jeff Bowers, who died

---

[1] March 4, 1927, c. 509, 44 Stat. 1424, 1426, 1436; U. S. C., Tit. 33, §§ 903 (b), 920 (d).

from a bullet wound inflicted while he was on duty in Del Vecchio's store in the District of Columbia.[2]

Evidence adduced at the hearing before a Deputy Compensation Commissioner tended to establish the following facts. On the morning of September 10, 1931, Bowers discovered a broken fastening on a door leading into an alley in the rear of the premises and engaged a carpenter to make repairs. The latter, while so occupied, hearing a sound like the bursting of an electric light bulb, followed by groans, entered the store and found Bowers lying on the floor. Death ensued without recovery of consciousness. An automatic pistol, owned by the decedent, which he kept in a drawer under a counter, was found in the partly closed drawer. There was blood in the drawer and on the counter near it. The bullet had entered the chest about three and one-half inches to the left of the median line and one inch above the nipple, emerged from the back of the body approximately in line with the point of entrance, and lodged in a paint can on a shelf behind the drawer about five feet above the floor. The ejected shell lay some twelve feet to the left of the drawer where it would naturally fall if the decedent had stood in front of the drawer, between the counter and the shelf, and held the pistol in his right hand pointing at his chest. Ballistic tests traced shell and bullet to the pistol. There were no identifiable fingerprints upon the weapon, but an indistinct print of the side of a finger was discernible. The front of Bowers' shirt bore grains of unburned powder which, with the condition of the material about the hole in the garment, indicated that the muzzle of the weapon had been held within two or three inches of the body. No rags or other material were discovered such as would suggest that Bowers was

---

[2] The statute is made a workmen's compensation law for the District of Columbia by the Act of May 17, 1928, c. 612, 45 Stat. 600.

cleaning the pistol. The victim of such a wound could have taken the few steps from the place .where the gun was found to that where his body lay.

The parties agree the injury was self-inflicted, but are in controversy as to whether it was accidental or intentional. According to the respondent's evidence, Bowers was in good health, of a happy disposition, and in good financial condition; his accounts were in order; on the evening before his death he had written to his mother a cheerful letter in which he stated he would soon write her again; and the same evening he had promised a friend to bring him from the store some goods which the friend desired to purchase. The petitioners adduced evidence that Bowers had suffered from an infection of the ear and undergone a mastoid operation; about ten days before his death he visited a specialist to whom he complained of pain in the ear and headaches which seemed to be increasing. He was advised another mastoid operation might be necessary and was sent to a hospital for an X-ray examination. He submitted to the examination, which disclosed the presence of pus in the middle ear, but did not thereafter return to the physician whom he had consulted.

The Deputy Commissioner denied an award of compensation, holding claimant had failed to establish that Bowers' duties required the use of a weapon and there was therefore no showing that his injury arose out of his employment. Upon a bill filed [3] the Supreme Court of the District set aside the order, holding the keeping of the pistol in the store, although unknown to the employer, was in furtherance of the latter's interest, the find-

---

[3] As provided by § 21 (b); U. S. C., Tit. 33, § 921 (b): "If not in accordance with law, a compensation order may be suspended or set aside, in whole or in part, through injunction proceedings, mandatory or otherwise, brought by any party in interest against the deputy commissioner making the order . . ."

ing to the contrary was wholly unsupported, and the evidence tended to prove the death was due to accident. The Court of Appeals concurred in the view that an award should not have been refused on the ground that the injury did not arise out of the employment; but as the case was tried on the theory of suicide, and the Deputy Commissioner had made no finding upon this issue, remanded the cause for further findings.[4]

The Deputy Commissioner reconsidered the case upon the record as originally made before him and, finding the death suicidal, again refused an award. The respondent then instituted the present proceeding to have this action set aside. The Supreme Court denied relief, but the Court of Appeals reversed,[5] declaring the finding of suicide not to be in accordance with law because, though the act withholds compensation where an employee willfully kills himself,[6] § 20 (d) creates a presumption, in the absence of substantial evidence to the contrary, that the injury was not willfully inflicted.[7] The court found the evidence as consistent with accident as with suicide, and said that in such circumstances the presumption required a finding in favor of the claimant; adding that whatever measure of proof may generally suffice to support other findings of a deputy commissioner, a finding of suicide, in the absence of substantial evidence, is not in accord-

---

[4] *Del Vecchio* v. *Bowers,* 62 App. D. C. 327; 67 F. (2d) 751.

[5] *Bowers* v. *Hoage,* 64 App. D. C. 226; 76 F. (2d) 996.

[6] Section 3 (b); U. S. C., Tit. 33, § 903 (b): "No compensation shall be payable if the injury was occasioned solely by the intoxication of the employee or by the willful intention of the employee to injure or kill himself or another."

[7] Section 20 (d); U. S. C., Tit. 33, § 920 (d): "In any proceedings for the enforcement of a claim for compensation . . . it shall be presumed, in the absence of substantial evidence to the contrary—(d) That the injury was not occasioned by the willful intention of the injured employee to injure or kill himself or another."

ance with law. Substantial evidence, said the court, must be such as to induce conviction; and the evidence upon which the officer here acted did not reach that standard.

In the view that the case does not fall within Rule 38, the respondent opposed the issuance of a writ of certiorari. The objection might be valid if the statute were confined in its operation to the District of Columbia. We will not ordinarily review decisions of the United States Court of Appeals, which are based upon statutes so limited or which declare the common law of the District. The Longshoremen's and Harbor Workers' Compensation Act, however, is national in scope, and a decision with respect to its enforcement constitutes a precedent of general application. We therefore granted the writ because of the important question as to the effect of § 20 (d).

We hold that the decision of the Deputy Commissioner should not have been annulled. The relevant substantive section of the act directs that no compensation shall be payable if the injury was occasioned by the willful intention of the employee to injure or kill himself; the adjective section creates a presumption that the injury was not so occasioned, in the absence of substantial evidence to the contrary. The question is whether, as the court below thought, the presumption has the quality of affirmative evidence. The answer must be that it has not.

When a trier of facts is to be persuaded of the truth of a disputed proposition, one or the other of the parties,—the proponent or the opponent,—has the burden of going forward with evidence. In the present instance, the fact that the wound was self-inflicted permits but one of two conclusions: either the decedent accidentally killed himself, or he committed suicide. Considerations of fairness and experience in human affairs induce fact-finding bodies, where there is a balance of probability, to

adopt a working assumption as the basis of a conclusion, unless and until the facts are developed by evidence.[8] The natural love of life, the comparative infrequency of suicide as contrasted with accident, and the likelihood that testimony as to the cause of death would be more readily available to the employer than to the claimant, justify a presumption, which the law indulges in such a case, that the death was accidental.[9] The act under consideration, however, does not leave the matter to be determined by the general principles of law, but announces its own rule, to the effect that the claimant, in the absence of substantial evidence to the contrary, shall have the benefit of the presumption of accidental death. The employer must rebut this *prima facies*. The statement in the act that the evidence to overcome the effect of the presumption must be substantial adds nothing to the well understood principle that a finding must be supported by evidence.[10] Once the employer has carried his burden by offering testimony sufficient to justify a finding of suicide, the presumption falls out of the case. It never had and cannot acquire the attribute of evidence in the claimant's favor.[11] Its only office is to control the result where there is an entire lack of competent evidence. If the employer alone adduces evidence which tends to support the theory of suicide, the case must be decided upon that evidence. Where the claimant offers substantial evidence in opposi-

---

[8] Thayer, A Preliminary Treatise on Evidence at the Common Law, pp. 314, 336; Wigmore on Evidence (2d ed.) Vol. 5, §§ 2487–2498, and Chapter 88.

[9] Jones, Commentaries on Evidence, (2d ed.), § 256; *Von Ette's Case*, 223 Mass. 56; 111 N. E. 696; *Manziano* v. *Public Service Gas Co.*, 92 N. J. L. 322; 105 Atl. 484; *Humphrey* v. *Industrial Commission*, 285 Ill. 372; 120 N. E. 816; *Westman's Case*, 118 Me. 133; 106 Atl. 532.

[10] *Crowell* v. *Benson*, 285 U. S. 22, 46, 49.

[11] Thayer, *ubi supra*, pp. 337, 339; Wigmore, *ubi supra*, Vol. 5, § 2487 (d).

tion, as was the case here, the issue must be resolved upon the whole body of proof pro and con; [12] and if it permits an inference either way upon the question of suicide, the Deputy Commissioner and he alone is empowered to draw the inference; his decision as to the weight of the evidence may not be disturbed by the court.[13]

For these reasons we are of opinion the Court of Appeals erred in holding that as the evidence on the issue of accident or suicide was, in its judgment, evenly balanced, the presumption must tip the scales in favor of accident. The only matter for decision was whether the affirmative finding of suicide was supported by evidence. It is clear that it was so supported and that the court should therefore not have set aside the Deputy Commissioner's order.

The judgment must be reversed and the cause remanded for further proceedings in conformity with this opinion.

*Reversed.*

---

[12] Thayer, *ubi supra,* p. 346.

[13] *Crowell* v. *Benson, supra,* 46; *Voehl* v. *Indemnity Insurance Co.,* 288 U. S. 162, 166.