**SALMON BAY SAND & GRAVEL CO., Inc., et al. v. MARSHALL, Deputy Commissioner, et al.**

No. 8492.

Circuit Court of Appeals, Ninth Circuit.

Dec. 1, 1937.

Rehearing Denied Dec. 13, 1937.

**2**

MATHEWS, Circuit Judge, dissenting.

George M. Naus and Donald Seibert, both of San Francisco, Cal. (Hubert Wyckoff, Jr., of San Francisco, Cal., and Roy E. Bigham, of Seattle, Wash., of counsel), for appellants.

J. Charles Dennis, U. S. Atty., and Gerald Shucklin, Asst. U. S. Atty., both of Seattle, Wash., for appellee Marshall.

Fred C. Campbell, of Seattle, Wash., for appellee Aho.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Appellants brought suit in the court below to set aside an order, made by appellee Marshall, as Deputy Commissioner, under the Longshoremen's and Harbor Workers' Compensation Act, as amended, 33 U.S.C.A. § 901 et seq., by which order an award of compensation was made to appellee Hilda Aho. Appellees moved to dismiss the bill, the motions were sustained, and, from the judgment of dismissal entered, this appeal is taken.

The Salmon Bay Sand & Gravel Company, Inc., hereinafter referred to as appellant, on July 14, 1936, was engaged in the sand and gravel business at and in the vicinity of Seattle, Wash. Its plant and storage facilities were located at Seattle. As a part of its operations it contracted with the Wagner Tug Boat Company to tow a scow owned by it from its plant in Seattle to Steilacoom, Wash., at which point the scow was loaded with gravel and then returned to the plant at Seattle. This involved a trip of approximately 60 miles each way on navigable waters of the United States, and about 24 hours were required to make a round trip. On these trips the tug and its tow would be from five miles to a quarter of a mile from shore; the latter distance being at Tacoma and Day Island, where the current is especially strong.

Edward Aho, a resident of Seattle, had been in the employ of appellant intermittently for from eight to ten years. His principal duties were to accompany the scow on the trips described, and at times when the scow was not in use he had miscellaneous duties at the plant of the employer. While on these trips with the scow, it was his duty to care for the tow lines, pump out the scow, place lights in the scow at nighttime, and perform some checking at the sand and gravel chutes. While on a trip he secured his meals on board the tug towing the scow, and sleeping accommodations were provided on the scow. When not engaged on the scow he slept and ate at his home.

On July 14, 1936, the tug Crest, owned by the Wagner Tug Boat Company, arrived at the plant of the employer at 6 in the morning for the purpose of towing the scow to Steilacoom for a load of gravel. As they were about to start, Edward Aho arrived and boarded the tug. The tug was fastened to the side of the scow in order to facilitate navigation through the government locks. During the trip through the locks, Edward Aho had his breakfast aboard the tug, as was the practice, and then boarded the scow.

Aho was in good spirits at breakfast. The weather was fairly good and calm. After the tug and scow had passed through the locks and into Puget Sound, the position of the lines was changed so that thereafter the scow was pulled by a line and bridle from the stern of the tug; the distance between the tug and the scow being about 500 feet. Aho was last seen at this time. The scow was about a half mile out from shore.

After Aho boarded the scow, neither tug nor scow touched shore or land at any place until they reached Steilacoom, nor was any boat or ship seen to touch the scow

during that period, nor was there a rowboat on the scow at the start or at destination. No one on the tug saw any one get on or off the scow during the tow, and those on the tug would have seen anything of that kind, unless a man approached or left the scow by swimming. Aho's disappearance was first noticed just off the dock at Steilacoom, perhaps 100 yards from shore. No one was seen to approach the scow or leave it as they approached this point 100 yards or so from the dock. The scow was searched and there was no place on it where it was possible for a man to conceal himself which was not searched. In the bunkhouse the bunk had the appearance of being used, and on it lay a magazine. On a table nearby was a purse with some change in it, a billfold, keys, cigarettes and a watch. It was customary for men in charge of the scow to sleep if they felt like it between ports when they were being towed. If they had been out late the night before they would go to bed during the tow.

The scow sat eleven feet out of the water, and its net tonnage was 253 tons. The entire trip was made in daylight, and took about six hours, beginning at 6 a. m. If anything went wrong, Aho would come out on the head end of the scow and wave, but ordinarily there was nothing for him to communicate to the tug until they reached Steilacoom. Those aboard the tug would look back every little while to the scow, and if Aho was on deck he would be seen, but there was nothing out of the ordinary or any occasion for anything like that on this trip. Aho has never been seen alive since, and his body has never been recovered.

Aho had been living with his wife since their marriage on June 2, 1920, and apparently had neither marital or financial difficulties.

From this evidence the Deputy Commissioner found that "Edward Aho, while engaged in maritime employment for the employer above named, fell from the scow of the employer and was drowned, * * *" and by order made an award to appellee Hilda Aho. Thereafter this suit was filed.

There are two assignments of error. The first asserts that recovery cannot be had because Aho was a member of the crew of the tug, and, therefore, 33 U.S. C.A. § 903(a) (1) is applicable. That statute provides that: "No compensation shall be payable in respect of the disability or death of—(1) A master or member of a crew of any vessel." This assignment has been abandoned.

The second assignment challenges the sufficiency of the evidence to support the finding of the Deputy Commissioner. Appellees contend that the evidence is fortified by 33 U.S.C.A. § 920(a, d), which provides: "In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—(a) That the claim comes within the provisions of this chapter. * * * (d) That the injury was not occasioned by the willful intention of the injured employee to injure or kill himself." * * *

The effect of the presumption mentioned in the foregoing statute is explained by the following quotation from Del Vecchio v. Bowers, 296 U.S. 280, 286, 56 S.Ct. 190, 193, 80 L.Ed. 229: "Once the employer has carried his burden by offering testimony sufficient to justify a finding of suicide, the presumption falls out of the case. It never had and cannot acquire the attribute of evidence in the claimant's favor. Its only office is to control the result where there is an entire lack of competent evidence. If the employer alone adduces evidence which tends to support the theory of suicide, the case must be decided upon that evidence. Where the claimant offers substantial evidence in opposition, as was the case here, the issue must be resolved upon the whole body of proof pro and con; and if it permits an inference either way upon the question of suicide, the Deputy Commissioner and he alone is empowered to draw the inference; his decision as to the weight of the evidence may not be disturbed· by the court."

Appellant contends that the evidence is insufficient to prove the death of Aho. Two inferences arise from the evidence: (1) That Aho fell overboard and was drowned; or (2) that Aho jumped overboard, swam to shore, and· is still·alive. Either· inference is reasonable, and .the presumption in that regard falls out of the case. Inasmuch as that fact is not a jurisdictional one (Crowell v. Benson, 285 U.S. 22, 46, 52 S.Ct. 285, 290, 76 L.Ed. 598), the finding of the Deputy Commissioner is conclusive. Del Vecchio ͮv. Bowers, supra.

Appellant contends that there must be proof of disappearance of Aho after he had been subjected to some "specific peril,"

which might reasonably be expected to destroy life, and that a sea voyage subjected Aho to a general, as distinguished from a specific, peril. Assuming, without deciding, that proof of a "specific peril" must be adduced (see Davie v. Briggs, 97 U.S. 628, 634, 24 L.Ed. 1086), we believe such a "specific peril" has been shown in the instant case. While a sea voyage, without more, might subject Aho to a general peril only, the water into which Aho fell would constitute a specific peril under the circumstances here.

Next, the death must have arisen "out of and in the course of employment." Appellant admits that the death, if it occurred at all, occurred in the *course* of employment. Appellant denies that it arose *out of* employment. We believe two inferences are possible from the evidence: (1) That at the time Aho fell overboard, he was investigating to see that the tow line was properly secured to the scow; or (2) that he was merely standing at the edge of the scow, where he was not required to be, and gazing into the water. As either inference could be drawn, the presumption in that regard falls out of the case. However, inasmuch as that fact is not a jurisdictional one (Crowell v. Benson, supra, 285 U.S. 22, at page 46, 52 S.Ct. 285, 290, 76 L.Ed. 598), the finding of the Deputy Commissioner is conclusive. Del Vecchio v. Bowers, supra.

Finally, the claimant must not have had a willful intention to kill himself. Here, we believe three inferences are permissible: (1) That Aho fell overboard accidentally; or (2) that he jumped overboard to swim ashore, but became ill or exhausted and drowned; or (3) that he jumped overboard to commit suicide. Again the presumption falls out of the case. However, since the fact is not a jurisdictional one (Crowell v. Benson, supra, 285 U.S. 22, at page 47, 52 S.Ct. 285, 291, 76 L.Ed. 598), the determination of the Deputy Commissioner is conclusive. Del Vecchio v. Bowers, supra.

■ The attorney for appellee has moved this court to fix an attorney's fee, pursuant to 33 U.S.C.A. § 928(a), and has claimed $250 for his appearance in this court. The Deputy Commissioner allowed the attorney $75 for his appearance before him. In addition to that sum we allow his claim to the extent of $75 for his appearances in court.

Affirmed.

MATHEWS, Circuit Judge (dissenting).

By the compensation order here in question, compensation was awarded for the death of a man who, so far as the evidence shows, is still alive. This man, Edward Aho, was last seen on July 14, 1936. He was then alive and in good health. There is no evidence that he was then exposed to, or thereafter encountered, any specific peril, or came within the range of any impending or immediate danger, which might reasonably be expected to destroy life, or that he disappeared under circumstances inconsistent with a continuation of life. Therefore, his subsequent absence, being of less than seven years' duration, raises no presumption that he is dead. Davie v. Briggs, 97 U.S. 628, 634, 24 L.Ed. 1086; Fidelity Mutual Life Ins. Co. v. Mettler, 185 U.S. 308, 319, 22 S.Ct. 662, 46 L.Ed. 922. See, also, Brownlee v. Mutual Benefit Health & Accident Ass'n (C.C.A.9) 29 F.2d 71, 75; United States v. Robertson (C.C.A.9) 44 F.2d 317, 319; State Life Ins. Co. v. Sullivan (C.C.A.9) 58 F.2d 741, 743; Sunny Point Packing Co. v. Faigh (C.C.A.9), 63 F.2d 921, 924.

The Deputy Commissioner's finding that Aho fell from his employer's scow and was drowned is a mere conjecture. There is no evidence of any fall or of any drowning. The scow and the tug which towed it from Seattle to Steilacoom were 500 feet apart. The tug's crew had no occasion to watch Aho or to note his movements; nor do they claim to have done so. Aho could have left the scow, by boat or otherwise, without attracting their attention. The fact that they did not see him leave proves nothing. It certainly does not prove that he fell overboard and was drowned.

Being unsupported by evidence, the compensation order was not in accordance with law, but was in violation thereof, and should have been set aside. Longshoremen's and Harbor Workers' Compensation Act, § 21, 44 Stat. 1436, 33 U.S.C.A. § 921; Crowell v. Benson, 285 U.S. 22, 46-49, 52 S.Ct. 285, 290, 291, 76 L.Ed. 598; Del Vecchio v. Bowers, 296 U.S. 280, 286, 56 S.Ct. 190, 193, 80 L.Ed. 229.

The decree should be reversed.