Clinton DUDLEY

v.

Stephen O'HEARNE, Deputy Commis-
sioner, Fourth Compensation
District,

and

Atlantic & Gulf Stevedores, Inc.

No. 4372.

United States District Court
D. Maryland.

Jan. 3, 1963.

Herbert J. Belgrad, Baltimore, Md.,
Harry K. Lott, Baltimore, Md., on the
brief, for plaintiff.

Daniel F. McMullen, Jr., Asst. U. S.
Atty., Joseph D. Tydings, U. S. Atty.,
on the brief, for defendant O'Hearne.

Alfred M. Porth, Baltimore, Md., for
defendant Atlantic & Gulf Stevedores,
Inc.

WINTER, District Judge.

In accordance with § 21 of the Long-
shoremen's and Harbor Workers' Com-
pensation Act, 33 U.S.C.A. § 921, plain-
tiff sues to suspend or set aside, in whole
or in part, by injunction, the order of the
Deputy Commissioner, Fourth Compen-

sation District, which rejected his claim for deficiency compensation, asserted pursuant to § 33(f) of the Act, 33 U.S. C.A. § 933(f), on the ground that after having elected to assert his remedies against the persons other than his employer whom he deemed to be liable therefor, he compromised the claim, without the written approval of the employer, so as to be barred from claiming deficiency compensation, in accordance with § 33(g) of the Act, 33 U.S.C.A. § 933(g).

The claim for deficiency compensation was made against Atlantic & Gulf Stevedores, Inc. (hereafter called "Atlantic"). The findings of fact of the Deputy Commissioner were:

"That on the 2nd day of November, 1959, the claimant above-named [Dudley] was in the employ of the employer above-named [Atlantic] at Baltimore, in the State of Maryland, in the Fourth Compensation District established under the provisions of the Longshoremen's and Harbor Workers' Compensation Act; and that the liability of the employer for compensation under said Act was self-insured; that on said day claimant herein, while performing service as a stevedore for the employer and engaged in unloading the SS 'Nabob' which was afloat in the Patapsco River, sustained accidental injury resulting in his disability when while working in the lower hold, he was hit on the head by a piece of lumber which had fallen from the tween deck where carpenters of the Oriole Ship Ceiling Company were working; that written notice of injury was not given to the employer within thirty days, but that the employer had knowledge of the injury and has not been prejudiced by failure to receive such written notice; that the employer fur-

nished the claimant with medical treatment in accordance with Section 7(a) of the said Act; that the average weekly wage of the claimant at the time of his injury was $72.30; that compensation account of temporary total disability was paid from 3 November to 21 January 1960, 11 3/7 weeks at $48.22 per week, in the amount of $551.09; that when compensation payments were terminated the claimant elected to sue the third party responsible for his injury; that the matter came on for trial before Judge J. Dudley Digges, and a jury in Baltimore City Court, on 21 March 1961; that on 22nd March 1961 before completion of the claimant's case, counsel for the claimant arranged a compromise settlement of the suit for $5,000.00; *that such compromise settlement was made without the written approval of the self-insured employer.*" (Emphasis supplied)

Of these findings, only the latter is challenged and is the subject of this proceeding.

Section 33 of the Act (33 U.S.C.A. § 933) affords a right to deficiency compensation if the person entitled to compensation brings suit against a person causing the injury other than his employer, but fails to recover the amount which the Act affords, *inter alia,* for accidental injury sustained in the course of his employment. However, subsection (g) of that section states: " * * * *the employer shall be liable for compensation * * * only if such compromise is made with his written approval.*" (Emphasis supplied) [1]

As found by the Deputy Commissioner, the plaintiff sued the North German Lloyd Lines (as to which plaintiff subsequently submitted to a non pros) and Oriole Ship Ceiling Company, Inc., in the

---

1. The rationale of this provision is as stated in Bell v. O'Hearne, 284 F.2d 777, 780 (4 Cir. 1960), "to prevent an employee or his beneficiaries to manage in-

dependently the course of pending litigation or to affect prospective litigation that is designed for the use of the employer as well as the employee * * * *."

Baltimore City Court. The *ad damnum* clause in his declaration was amended to claim $150,000.00; his negotiating figure was $95,000.00; and, in the second day of trial before Honorable J. Dudley Digges, specially assigned to the Supreme Bench of Baltimore City, the case was compromised for $5,000.00.

The chronology of the actual mechanics of the compromise was as follows: Suit was initially instituted in the name of Clinton Dudley as the sole plaintiff. After a settlement figure was agreed upon, the negotiations having taken place principally in the judge's chambers, counsel for Atlantic (Alfred M. Porth, Esq., of the Baltimore Bar), who was not attending or participating in the trial, was reached by telephone by counsel for the claimant. Mr. Porth authorized counsel for the claimant to file an order, and to sign his name as counsel, directing that Atlantic be entered as a use plaintiff, as its interest may appear. Thereafter, a release was obtained from the claimant, releasing Oriole Ship Ceiling Company, Inc., but Atlantic was not a party to the release. A judgment nisi [2] was entered by the Court in the amount of the settlement figure and, at a later date, the usual order to the Clerk to enter the judgment "Paid and Satisfied" was filed, signed, *inter alia,* by counsel for Atlantic.[3]

Testimony was presented before the Deputy Commissioner to show the discussions between one of counsel for the claimant (Eugene A. Alexander, III, Esq., of the Baltimore Bar) and Mr. Porth, counsel for Atlantic, prior to the filing of the order entering Atlantic as a use plaintiff, but this testimony was confined to the questioning of Mr. Alexander.

Precisely what transpired is not clear, because of the inability of Mr. Alexander to recall all of the details of the transaction, but in substance his testimony was that he had been asked to become co-counsel for the plaintiff solely for the purpose of trying the case in the Baltimore City Court, that in the course of trial he concluded that counsel for the defendant was in possession of information that would have a profound impact on claimant's right to recovery or extent of recovery, that after consulting with claimant and his co-counsel, he undertook negotiations with his opposing counsel in the chambers of the judge, and that a settlement figure was agreed upon. Mr. Alexander stated that he then concluded that Mr. Porth, counsel for Atlantic, should be consulted " * * * in order to protect the client's interest insofar as the compensation claim was concerned."

Mr. Alexander did recall that the compensation proceeding was discussed, and that he had said that he, personally, would not participate in any claim for deficiency benefits under the Longshoremen's and Harbor Workers' Compensation Act. In amplification of this testimony, Mr. Alexander was questioned by Mr. Porth, and answered as follows:

"Q Specifically, Mr. Alexander, didn't you call me to ask me [sic] permission to enter this judgment to the use of the Atlantic & Gulf to the extent of their lien?

2. Section 33(f) of the Act, 33 U.S.C.A. § 933(f), does not require written approval of the employer as a condition precedent to a claim for deficiency compensation when the employee's claim against a third person is reduced to judgment. None of the parties here makes any claim that this provision of the Act is applicable, and correctly so, because the judgment here was fixed by agreement and not by operation of the judicial process, by either the court or a jury, Bell v. O'Hearne, 284 F.2d 777, 780 (4 Cir. 1960).

3. Although a copy of the release was admitted into evidence, the order to enter Atlantic as a use plaintiff and the order of satisfaction were not. However, the transcript shows that the file of the Baltimore City Court was produced at the hearing, though not formally offered, and referred to by one of the witnesses in testifying, and by counsel. In the light of these facts the Court has felt free to consult that file, too.

·"A That is essentially correct. The element that disturbed me was involved in what I understood to be the law. I may be in error.

"It seems to me there was some discussion of a case where a verdict had been obtained before a lower court and an appeal was made or taken by the defendant and that, pending the appeal, the case was settled and that the carrier in the compensation angle of the case then raised the contention that it had not participated in that settlement and, therefore, the claimant-plaintiff was barred from seeking additional compensation.

"I did not feel that I could, perhaps, or could any attorney, perhaps, satisfactorily explain that condition or that version of the law as I construed it to a plaintiff such as the one in this case.

"I do believe there was some discussion with him, Mr. Lott and I, but, in any event, as I stated before, that was the reason that I wanted to reach you on the 'phone.

"It also seems to me—Mr. Baldwin, of course, will be here to testify —that at one time, and I am reasonably sure this was in a discussion at the bench, they wanted a release from you or wanted you to participate in it in some way.

"Mr. Baldwin can explain that, but I, of course, had nothing to do with that aspect of it, and I think that was the reason for the call. I felt that if the case went on and evidence was developed, due to the fact that Mr. Lott and I had ascertained either the evening before or the morning of March 22nd that the whole case might well be lost—perhaps it is my Scotch nature—but I didn't want to throw away any money."

■ At the outset, the Court is fully cognizant of the limited scope of judicial review and the various adjudications which hold that the burden of proof rests upon one who seeks to suspend or enjoin an order of a Deputy Commissioner, but that the order, if supported by substantial evidence, is unassailable, O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951); Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L. Ed. 732 (1940); Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229 (1935); and Court of Appeals and District Court opinions too numerous to cite. Only because of a misconstruction of law, or a lack of substantial evidence, may the order of a Deputy Commissioner be overturned.

■ Defendants urge that the finding of the Deputy Commissioner is supported by substantial evidence because, they argue, the record discloses that the sole reason that Atlantic became a use plaintiff and executed, through its counsel, an order of satisfaction was to obtain reimbursement for compensation it had paid and medical services it had furnished.

When the record is viewed as a whole the order of the Deputy Commissioner cannot stand. The record shows that Atlantic became a party to the suit in the Baltimore City Court and, as a party, joined in the order of satisfaction. Both actions on its part were evidenced by writings, and Mr. Porth's authority to execute these writings and to delegate to Mr. Alexander authority to sign Mr. Porth's name to the order by which Atlantic became a use plaintiff is not questioned. When Atlantic entered the litigation, knowing that it had been settled and the amount of settlement, and participated in the execution of papers terminating it, *prima facie*, it approved the compromise, unless there be a clear showing that claimant was fully advised and clearly understood that Atlantic's actions were for a limited purpose.

While Mr. Alexander, acting on his best recollection, adopted the question of Mr. Porth that protection of Atlantic's right of reimbursement was one of the reasons why Atlantic entered the litigation, Mr. Alexander also advanced two other reasons—first, to protect the claimant's right to deficiency compensation and, second, to satisfy the request of counsel for Oriole Ship Ceiling Company, Inc.[4] If Mr. Alexander's testimony is to be adopted as to the first, it cannot be rejected as to the others. In this regard, it is significant that it was Mr. Alexander, as one of counsel for the claimant, who initiated the telephone call to Mr. Porth, so that it may even be inferred that protection of the claimant's right to deficiency compensation was the principal reason for setting in motion the means by which Atlantic entered the law suit.

Mr. Alexander was the sole witness called by Atlantic on this point. Although Mr. Porth was a party to the conversation, he did not testify. Although at least two, if not three, of counsel for defendants in the Baltimore City Court were in Mr. Alexander's presence when he talked to Mr. Porth by telephone, no one of them was called as a witness. Although Mr. Alexander's co-counsel was privy to the discussion, he was not called as a witness, either.

 Atlantic was entitled to reimbursement for compensation which had been paid and medical services which had been furnished. Section 7(d) of the Act, 33 U.S.C.A. § 907(d), gives the employer a cause of action against a third person causing the injury for any amounts paid by the employer for medical treatment, and § 33(b), 33 U.S.C.A. § 933(b), constitutes the acceptance of compensation by an employee, an assignment to the employer of all right of the employee to recover damages against the third party causing the injury, for which, by § 33(d) of the Act, 33 U.S.C.A. § 933(d), the employer may institute proceedings against the third party or compromise with him, before or after bringing suit. Although, as a practical matter, insurers and employers, or both, may become use plaintiffs, in actions brought by employees against third persons alleged to have caused an injury, for the purpose of effecting reimbursement of compensation and medical services, *nothing in the Act requires this procedure*. If Atlantic's sole purpose in entering the litigation was to enforce its right of reimbursement it should have protected itself by a statement, preferably in writing, with the claimant to that effect. No such agreement was proved through the testimony of Mr. Alexander, and there is nothing else in the record from which the Deputy Commissioner could have found that such an agreement was made.

Under such circumstances, the approval of Atlantic to be presumed from its direct participation in the litigation and its signing the order of satisfaction was not rebutted. Because of the conclu-

---

4. Mr. Alexander elaborated on these reasons in response to a question by Mr. Porth, as follows:

"Q Did you discuss with Mr. Lott and Mr. Dudley the further pursuance of a deficiency claim and compensation prior to calling me.

"A The possibility of that, I am sure I discussed it with Mr. Lott and I am reasonably sure, and I will refer to Mr. Lott's recollection because he was there, but as I said before, Mr. Porth, to me it was a difficult thing to explain to a man of Mr. Dudley's intelligence.

"I don't mean to belittle him in any way. My embarrassment is that if there was a misunderstanding between us, *I called you from my understanding of the law and, again, I say I might be wrong, but I felt it was necessary to at least theoretically protect the claimant's interests in the matter.*

"As to your interpretation, if there was a misunderstanding, I am sorry. I am reasonably sure I did discuss with Mr. Lott because, as I said before, although I might be in error, *my understanding was if there was a settlement without your participation, that would forego any additional compensation right* and, also, because I think *counsel for the defendant wanted that,* but I have nothing to do with that. That was of no interest to me." (Emphasis supplied)

sion that Atlantic approved in writing the compromise, it is unnecessary to consider the plaintiff's argument in regard to estoppel.

The order of the Deputy Commissioner is vacated insofar as it rejected the claim for lack of Atlantic's written approval, and the case is remanded to him for determination on the merits of what deficiency compensation, if any, the claimant should be awarded. Counsel may agree upon a form of order.