**COUNTY OF ORANGE, Plaintiff,**

v.

**SULLIVAN HIGHWAY PRODUCTS, INC. and North Dakota Cement Company, Defendants.**

No. 88 Civ. 8583 (JSM).

United States District Court, S.D. New York.

Dec. 20, 1990.

**644**

Grant W. Kelleher, Office of Martin Rosenblum, Middletown, N.Y., for plaintiff.

Frederick T. Davis, Saul B. Shapiro, Patterson Belknap Webb & Tyler, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

MARTIN, District Judge.

This matter is before the Court on the defendants' motion for partial summary judgment dismissing that part of plaintiff's claim that seeks to establish defendants' liability and resulting damages beyond 1983. For the reasons discussed below, defendants' motion is granted.

Plaintiff commenced this action pursuant to the Sherman and Clayton Acts to recover damages resulting from a conspiracy to submit non-competitive, rigged bids and to allocate geographic areas within New York State for the sale of asphalt to the plaintiff. The action arises from a one-count indictment filed in this Court on June 25, 1987 charging Sullivan Highway Products, Inc. ("Sullivan") and its president Patrick Reardon as well as three other companies and their principals with conspiracy to rig bids from 1978 through 1983. On April 27, 1988, Sullivan, through corporate resolution, and Reardon pled guilty to the indictment pursuant to a cooperation agreement and testified as government witnesses at the trial of the other co-conspirators, all of whom were acquitted.[1] Sullivan was fined $50,000.00 and Reardon was sentenced to one year probation and no fine. *United States v. Yonkers Contracting Co.*, 682 F.Supp. 757 (S.D.N.Y.1988) (Goettel, J.). Based upon the collateral estoppel effect of the criminal convictions, plaintiff's motion for partial summary judgment as to defendants' liability was granted in an opinion by Judge Keenan, dated October 12, 1989.[2]

Defendants' motion, which apparently stems from an Orange County "Explanatory Memorandum" which indicated that the County would be seeking damages from 1978 through 1987, is straightforward. Simply, defendants claim that plaintiff has failed to present any evidence that the conspiracy extended beyond 1983. In fact, defendants present evidence, discussed in detail below, which indicates that the conspiracy, or at least defendants' participation therein, ended sometime in 1983 following a meeting between Reardon and a co-conspirator, Nick Badami, at one time the president of Maybrook Materials, Inc.

■ Plaintiff, in opposition to defendants' motion, does not present any evidence that indicates either that the conspiracy lasted beyond 1983 or that refutes defendants' contention that the conspiracy ended after Reardon's meeting with Badami. Instead, plaintiff relies upon a line of cases that provides for a presumption that a conspiracy continues to exist until a defendant satisfies his or her burden of showing some affirmative act indicating abandonment of participation in the conspiracy or termination of the conspiracy. *See, e.g.,* *Hyde & Schneider v. United States*, 225 U.S. 347, 369, 32 S.Ct. 793, 803, 56 L.Ed. 1114 (1912); *United States v. Battista*, 646 F.2d 237, 246 (6th Cir.), *cert. denied*, 454 U.S. 1046, 102 S.Ct. 586, 70 L.Ed.2d 488 (1981); *United States v. Borelli*, 336 F.2d 376, 388 (2d Cir.1964), *cert. denied*, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965); *United States v. Rollnick*, 91 F.2d 911, 918 (2d Cir.1937).

---

1. North Dakota Cement Company is named as a defendant because it acquired Sullivan's assets and property in December 1985 and continues to carry on Sullivan's business in Sullivan's name.

2. While there appears no discussion as to whether the determination of liability encompassed the post–1983 period, the plaintiff, in its opposition brief, concedes that Judge Keenan's decision only covered liability for the period 1978 to 1983.

All of these above-cited cases and, in fact, all of the cases cited by plaintiff are criminal actions. Plaintiff, however, argues that this presumption of continuity should also apply in the civil arena since Clayton Act treble damage actions, although undeniably civil, nevertheless play a penal role in the statutory scheme set up for enforcement of the anti-trust laws. *See e.g., Illinois Brick Co. v. Illinois,* 431 U.S. 720, 746, 97 S.Ct. 2061, 2075, 52 L.Ed.2d 707 (1977) (purpose of § 4 of Clayton Act was to create a "group of 'private attorney generals' to enforce the antitrust laws"), *reh. denied,* 434 U.S. 881, 98 S.Ct. 243, 54 L.Ed.2d 164 (1977); *Waldron v. Cities Service Co.,* 361 F.2d 671, 673 (2d Cir.1966) ("We are not unmindful that private antitrust suits to some extent cast the plaintiff in the role of a 'private attorney general' ..."), *aff'd,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968), *reh. denied,* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); *United States v. Standard Ultramarine and Color Co.,* 137 F.Supp. 167, 171 (S.D. N.Y.1955) (private damage action characterized as an "auxiliary policing method" designed "to help achieve the broad objectives of the [Sherman] Act"). From these cases, plaintiff argues that since it is acting as a "private attorney general" exercising "an auxiliary policing method," the presumption should also apply to this action. Failure to do so, plaintiff claims, "would do violence to the penal function of the antitrust treble damage action."

Defendants, on the other hand, argue that the applicability of the presumption in the civil setting would undercut the "entire body of antitrust jurisprudence." Thus, defendants contend that, unlike the Sherman Act, the Clayton Act's treble damage provision is "in essence a remedial provision" which "measures the awards by a multiple of the injury *actually proved.*" *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 485–86, 97 S.Ct. 690, 696, 50 L.Ed.2d 701 (1977) (emphasis added). In addition, defendants note that the burden of proof on plaintiffs in civil antitrust actions is and always has been strict. *See, e.g., Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (plaintiff "must present evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently"). Thus, defendants argue that application of the presumption would undermine this strict burden of proof.

In short, utilizing competing policy arguments, plaintiff focuses on the Clayton Act's penal functions while the defendants stress the Act's remedial nature. However, it is clear that the treble-damage provision of § 4 of the Clayton Act serves and was designed to serve both remedial and penal functions. As the Supreme Court observed in *Brunswick:*

> When Congress enacted the Clayton Act in 1914, it 'extend[ed] the remedy under section 7 of the Sherman Act' to persons injured by virtue of any anti-trust violation. H.R.Rep. No. 627, 63rd Cong., 2d Sess., 14 (1914). The initial House debates concerning provisions related to private damages actions reveal that these actions were conceived primarily as 'open[ing] the door of justice to every man, whenever he may be injured by those who violate the antitrust laws, and giv[ing] the injured party ample damages for the wrong suffered.' 51 Cong.Rec. 9073 (1914) (remarks of Rep. Webb); *see, e.g., id.,* at 9079 (Rep. Volstead), 9270 (Rep. Carlin), 9414–9417, 9466–9467, 9487–9495. The House debates following the conference committee report, however, indicate that the sponsors of the bill also saw treble-damages suits as an important means of enforcing the law. *Id.,* at 16274–16275 (Rep. Webb), 16317–16319 (Rep. Floyd).

429 U.S. at 486, n. 10, 97 S.Ct. at 696, n. 10. *See also Illinois Brick Co.,* 431 U.S. at 746, 97 S.Ct. at 2075 ("§ 4 has another purpose in addition to deterring violators and depriving them of the 'fruits of their illegality,' it is also designed to compensate victims of antitrust violations for their injuries."); *Monarch Life Insurance Co. v. Loyal Protective Life Insurance Co.,* 326 F.2d 841, 846, n. 2 (2d Cir.1963) ("The [Clayton Act] treble-damage action was intended not merely to redress injury to an

individual through the prohibited practices, but to aid in achieving the broad social object of the statute"), *cert. denied,* 376 U.S. 952, 84 S.Ct. 968, 11 L.Ed.2d 971 (1964).

Having reviewed the competing principles, it appears that if a presumption applies in a criminal case against a defendant facing possible incarceration, there would be little reason not to apply the presumption in an analogous civil case—one brought under a statute with both civil and penal functions—where the burden of proof is less and the defendant is facing only a monetary loss.

Rather than adopt a general rule, however, it seems more appropriate to make the judgment whether to apply a particular presumption on a case by case basis. Here, the presumption that a conspiracy, when shown to exist, is presumed to continue until the evidence establishes that it terminated involves no more than drawing a logical inference from an established fact. Once it is shown that a conspiracy of indefinite duration existed, it is logical to infer (or presume) that the conspiracy continued beyond the last conspiratorial act established by the evidence. This logic would apply whether the case at issue was civil or criminal.

Thus, the more appropriate question is not whether the presumption that a conspiracy continues should be applied in a civil case, but rather what weight must be given to that presumption and what evidence must be presented to overcome it.

The parties, not surprisingly, dispute the weight the presumption holds and the evidence necessary to rebut it. They do agree, however, that Federal Rule of Evidence 301 governs the debate. This Rule provides that:

> a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof upon the party in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

The Rule does not discuss the issue of what is required to rebut a presumption.[3] However, a review of applicable case law and the views of the legal commentators indicates that a presumption is considered "rebutted if a reasonable jury could find, on the basis of the evidence in the case, the contrary of the presumed proposition of fact more probable than not." 1 Weinstein's Evidence, § 301[02], p. 301–32 (1990).[4]

■ In the present case, the defendants have presented sufficient evidence to not only rebut the presumption but also to satisfy to the Court that their motion for summary judgment should be granted.[5]

---

**3.** The Committee Notes to this Rule provide that the "so-called 'bursting bubble' theory of presumptions, whereby a presumption vanishes upon the appearance of any contradicting evidence by the other party," was rejected since it "gives to presumptions too slight an effect." At the same time, Congress rejected the Supreme Court's recommendation that a presumption has "the effect of placing upon the opposing party the burden of establishing the nonexistence of the presumed fact." Thus, the Rule is a compromise which instead shifts the burden of going forward with evidence but not the burden of proof. *See* Wright and Graham, Federal Practice and Procedure § 5122, p. 571.

**4.** *See also Pratt & Whitney Canada, Inc. v. United States,* 17 Cl.Ct. 777 (1989) ("the burden is satisfied by evidence which, viewed in the aspect most reasonable to the burdened party, is sufficient to enable the trier of fact to find in his favor. To rebut a presumption, evidence must

be legally sufficient to enable the trier of fact to support a finding contrary to the presumed fact."), *aff'd without op.,* 897 F.2d 539 (Fed.Cir. 1990), *reh. den.,* 1990 U.S.App.LEXIS 4798 (Fed. Cir.1990); *Sinatra v. Heckler,* 566 F.Supp. 1354, 1359–60 (E.D.N.Y.1983) ("In order to rebut the presumption ..., the claimant must adduce evidence that would be sufficient to overcome a directed verdict for the Secretary in a jury trial"); 6 Moore, Federal Practice, ¶ 56.11[10] at p. 56–159 ("presumption can be overcome by affidavits and other extraneous materials and when there are no genuine issues of fact in the case, summary judgment is proper."); *In re Alithochrome Corp.,* 53 B.R. 906 (Bankr.S.D.N.Y.1985) ("On a motion for summary judgment the presumption has the same effect it would otherwise have").

**5.** If a finding is made that a presumed fact has been effectively rebutted, the presumed fact ceases to exist. *Pennzoil Co. v. Federal Energy*

Specifically, Mr. Reardon testified at the criminal trial that the conspiracy ended in late spring or early summer of 1983:

> I told Nick [Badami, then president of Maybrook Materials, Inc.] that they were wrong, they weren't necessary. We ought to cut it out.
>
> He said, I agree a hundred percent. And we never had any more meetings.

Reardon further testified that prices were arrived at independently thereafter.

In addition, defendants cite to the testimony of John Maggard, another cooperating witness and the former president of Maybrook Materials, Inc. who was succeeded by Badami. Maggard testified at the criminal trial that the meetings lasted until 1982 or 1983.

Apart from testimony of cooperating witnesses, defendants point to the fact that the indictment did not charge defendants with participating in a conspiracy "up until the date of the indictment" but only that the co-conspirators met from 1978 to 1983 to discuss the prices they would submit for the bids. Moreover, the bill of particulars furnished by the government identified the illegal bids as having been submitted from 1978 to 1983 and the government's supplemental bill stated that Reardon was associated with Sullivan "for the entire period covered in the indictment, i.e., at least as early as 1978 and continued into 1983."

Finally, plaintiffs, in their complaint in this action, sought damages caused by the defendants' and their co-conspirators' participation in a conspiracy "[f]rom at least as early 1978 and continuing into 1983 ..."[6]

Plaintiff presents no evidence in response to the defendants' proof. Instead, the plaintiff argues that even if the presumption has been rebutted and, thus, drops out, the defendants' proof that the conspiracy ended in 1983 rests upon the testimony of witnesses whose credibility must be evaluated. This, plaintiff contends, creates a genuine issue of fact sufficient to preclude summary judgment. In response to a similar contention, the Court in *Sterling Nat. Bank & Trust Co. v. Federated Dept. Stores*, 612 F.Supp. 144, 146 (S.D.N.Y.1985) stated that:

> If the credibility of the movant's witness is challenged by the opposing party and specific bases for possible impeachment are shown, summary judgment should be denied. There must, however, be more than mere allegations in a memorandum of law to place credibility in issue and preclude summary judgment; specific facts must be produced.

*See also United States v. Pilot Petroleum Associates, Inc.*, 712 F.Supp. 1077, 1082 (E.D.N.Y.1989).[7] The Court finds this holding fitting in the present case and, thus, rejects plaintiff's attempt to create an issue of fact based solely upon an allegation challenging the movant's credibility.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment dismissing that part of plaintiff's claim that seeks to establish defendants' liability and resulting damages for a period beyond 1983 is granted.

---

*Regulatory Com.*, 789 F.2d 1128, 1136–37 (5th Cir.1986) ("If the party against whom the presumption operates produces evidence challenging the presumed fact, the presumption simply disappears from the case"); *In re Yoder, Co.*, 758 F.2d 1114, 1120 (6th Cir.1985) ("we hold that a presumption under Rule 301 has no probative effect once rebutted"); *cf. Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 713 (6th Cir.) ("a statutory presumption 'falls out of a case' when the party against whom the presumption works meets his burden of offering evidence sufficient to justify a contrary finding") (*quoting Del Vecchio v. Bowers*, 296 U.S. 280, 286, 56 S.Ct. 190, 80 L.Ed. 229 (1935)), *cert. denied*, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 303 (1975).

**6.** Similarly, in a parallel suit brought by the State of New York on its own behalf and on behalf of the Town of Newburgh, later settled, the plaintiffs sought damages arising from activities conducted "[f]rom at least 1978 and continuing into 1983 ..." *See State of New York v. Sullivan Highway Products, Inc., North Dakota Cement Company and Patrick W. Reardon*, 89 Civ. 4218, 1989 WL 124213 (S.D.N.Y.1989).

**7.** Indeed, as in *Pilot Petroleum Associates*, the party raising the issue of credibility failed to take the deposition of those individuals whose credibility was attacked.

The parties are directed to submit a Joint Pre–Trial Order within thirty days of their receipt of this Memorandum Opinion and Order.

SO ORDERED.