New Jersey Department of Labor,
Workmen's Compensation Bureau.

JOHN EZYSKE, PETITIONER, v. WAVERLY FUR DRESSING
COMPANY, RESPONDENT.

Decided March 11, 1936.

For the petitioner, *Ishmael Sklarew.*

For the respondent, *Avidan & Avidan.*

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The substance of the testimony for the petitioner on the question of an accident in its material aspect was that while petitioner was working at his factory bench by reason of the opening of a door to the rear of the petitioner, a strong draft was created with the window in front of the petitioner, which was then opened, which draft either chilled the petitioner who had been perspiring previous to that, or caused him to fall either against the wall or to the floor. The exact cause of the fall as related by the petitioner is not stated very clearly.　\*　\*　\*　It is alleged that petitioner fell about three times in this like manner, the last time being after he had taken a drink of water on the factory premises.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

All of the doctors who testified for the petitioner, diagnosed petitioner's disability as a condition commonly known as a cerebral hemorrhage, some calling it a hemiplegia on the left

side. It was conceded that the petitioner had an abnormally high blood pressure prior to the hemorrhage. Because the blood pressure having been high immediately following the hemorrhage, it is presumed that it must have been still higher prior to the hemorrhage. All doctors for the petitioner conceded that the condition from which the petitioner suffered could reasonably follow from natural causes because of the petitioner's high blood pressure. An attempt was made by the medical testimony produced on behalf of the petitioner to show that the chilling of the body caused by the sudden gust of wind, which was alleged to have been produced at or about the time of petitioner's fall, could produce such an increase in blood pressure as to cause the cerebral hemorrhage which petitioner suffered.

For the respondent testimony was produced by Mr. Hyman Rothberg, who was one of the persons interested in the ownership of the respondent company, who stated that at the time of the petitioner's alleged collapse, he was in the same factory room with the petitioner; that he noticed petitioner leave his work bench, proceeding to the same room for a drink of water and then return to the work bench and just about the time petitioner was standing there, petitioner suddenly collapsed. Mr. Rothberg then removed petitioner to the outside of the room and noticing his serious condition immediately removed him to the Beth Israel Hospital. Petitioner's testimony concedes that Mr. Rothberg removed petitioner to a point outside of the premises. Mr. Rothberg states definitely that petitioner collapsed but once.

Mr. Rothberg further testified that petitioner was working in a room used by the "fleshers," fleshers being persons who separate skins from furs with the use of knives. The work is not of a heavy nature. To the rear of this particular room is a second room part of which has been set off as a drying room and to the rear of which are the two doors, which are referred to in the testimony. It is alleged that the opening of these two doors caused the gale or the draft which produced a chilling of petitioner's body. Mr. Rothberg was very definite in his testimony that these two doors were closed all during the morning of petitioner's collapse. The collapse is alleged

to have occurred between nine and ten o'clock in the morning. Not only were these two doors closed at that particular time but were closed by a lock and could only be opened with the aid of a key. The two doors appear to be heavy metal doors and open from the bottom to the top. Testimony appears that these doors are generally closed throughout the morning. They are open only in the evening for a short time to permit loading or unloading of the merchandise or goods.

Petitioner himself in his own testimony conceded that the door is open only for the purpose of loading and unloading.

Further, the testimony of Mr. Rothberg was to the effect that the distance from the place where petitioner was working at his work bench to these two doors in question was a distance of approximately seventy feet. Between the two rooms, that is, the room in which appears petitioner's work bench, and the second room to the rear of which are the two doors in question, is a small door passage which is in part obstructed by a tank. The distance between the work bench and the two doors in question as further shown by the photographs and testimony of the witnesses, definitely must be greater than as testified to by petitioner.

That petitioner collapsed in the manner above recited and that he collapsed but once is further confirmed by the testimony of two co-workers, Mr. Louis Feimen and Mr. Hyman Drescher. They testified to the effect that they simply noticed that the petitioner proceeded to take a glass of water and that as petitioner returned to his work bench, he suddenly collapsed without any further cause and was then removed by Mr. Rothberg outside.

The respondent further introduced into evidence the hospital record of Beth Israel Hospital of Newark, New Jersey, by Dr. Margolis who received the petitioner at the hospital on his admission Dr. Margolis testifying from the hospital record reported in his own handwriting, stated that petitioner told him that he (petitioner) suddenly noted a severe pain in the right side of his head, which was accompanied by a feeling of faintness and dizziness; that petitioner had been suffering from headaches prior to the alleged collapse; that petitioner had a blood pressure which was very high and

abnormal. The records of St. Peter's General Hospital, New Brunswick, New Jersey, although offered into evidence by respondent were objected to by petitioner and, therefore, any information of these hospital records were not available for consideration.

In view of the above testimony as produced by the respondent and as further corroborated by the records of the Beth Israel Hospital, I find and determine that the petitioner in this case did not sustain an accident within the meaning of the Workmen's Compensation act; that the doors to the rear of petitioner's work bench were in fact closed and that, therefore, no such draft or force of wind was produced as alleged by the petitioner.

\*       \*       \*       \*       \*       \*       \*

The medical testimony produced by the respondent by Dr. Margolis, Dr. Blumberg and Dr. Koppel, the last two of whom examined petitioner, seems to be clear to the effect that the mere chilling of the body will not produce an increase in blood pressure so as to produce any cerebral hemorrhage. The chilling of the body will simply affect the circulatory system on the surface area. It could only affect the cutaneous circulation and could not produce the collapse described in this case. Dr. Blumberg, who has had considerable experience in these types of case, further testified that he never heard of a case of cerebral hemorrhage being produced in the manner claimed by petitioner in this case.

From all of the foregoing, I do therefore find and determine that the petitioner did not sustain an accident arising out of and in the course of his employment with the respondent; that petitioner's disability was caused by a cerebral hemorrhage which was due to natural causes unrelated to his employment or conditions of employment, and further, that no accident within the meaning of the Workmen's Compensation act or trauma in anywise aggravated or accelerated the petitioner's pre-existing condition to produce the ultimate cerebral hemorrhage.

\*       \*       \*       \*       \*       \*       \*

JOHN C. WEGNER,
*Deputy Commissioner.*