NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

WILLIAM AUGIS, PETITIONER, v. IGOE BROTHERS, RESPONDENT.

Decided April 4, 1938.

For the petitioner, *Geltzeiler & Honigfeld* (*David Roskein, of counsel*).

For the respondent, *George E. Meredith*.

\*       \*       \*       \*       \*       \*       \*

Prior to the first hearing held on this matter the petition was amended to allege that the petitioner "came in contact with and inhaled coal gas fumes resulting in accident."

This case took seven days to try and it would serve no useful purpose to recite in detail the testimony of the various witnesses.

The petitioner, by his own testimony, and that of his witnesses, attempted to show that he came to work on the morning of December 29th, 1936, and upon arriving in the machine shop or the shop adjacent to it detected an odor of gas, whereupon he went to the boiler room. When he arrived there he testified that the room was filled with smoke and gas and that the smoke was so dense that he was overcome with an attack of violent coughing and gagging and that he had to grope his way around to find the coal shutes in order to open them to let in some air; that thereafter he found his way to the water gauge and found that it registered only partly full whereupon he let more water into the boiler. According to the petitioner's testimony these operations took about ten minutes. He testified that he then left the boiler room, went upstairs to inspect a machine in the nail room and having inspected it went back into the machine shop and as he reached his bench he collapsed. The petitioner further sought to prove by his testimony that the cause of this tremendous volume of smoke and gas in the boiler room was the installation of a new stoker and boiler and that it was not operating properly and that the flue from it to the smoke stack was not adequate.

The respondent produced a long list of witnesses all of whom testified that there was no odor of coal gas and no smoke in and around the boiler room, galvanizing shop and nail room on the morning in question and it is significant

that the petitioners' own witness, John Gessner, testified that he had not noticed any odor of gas nor did he see any smoke. The respondent further showed, through witnesses, that the stoker was automatically set at the lowest of three speeds and that this adjustment was not changed from the date of installation for a number of months thereafter and that the flue that was installed was adequate to take off all gases with the stoker adjusted to the lowest speed. The respondent further showed that if the rooms were filled with gas and smoke to the extent claimed by the petitioner there would necessarily have to be a back fire and that in turn would produce a warping of the plates. The respondent produced the seller of the equipment who stated that he made frequent inspections following the installation and at no time found evidences of back firing and stated that the new equipment functioned perfectly.

The respondent produced other witnesses notably the man in charge of the nail machine which required repair who testified that the petitioner never left the machine shop or nail room on the morning in question and that in order to reach the boiler room he would have to pass through the nail room. This testimony was corroborated by other witnesses. The respondent further produced and called the men who were in charge of the petitioner's work, all of whom testified that they had no knowledge of gas and smoke in and about the boiler room in question and further that their first notice of it was at the time of the filing of the amended petition in the month of November, 1937.

The petitioner's medical testimony tended to show that the petitioner was suffering from a hemiplegia and that he was, in his present condition, totally disabled as the result of the hemiplegia. Neither of these facts were disputed by the respondent. The testimony of all of the doctors indicated that the petitioner was suffering from a hypertensive vascular disease prior to this occurrence and it was shown from the hospital records that the petitioner presented a blood pressure of 240/120 on the date of his admission to the hospital and the doctor who took care of the man in the hospital testified

further that he got no history of being overcome by coal gas or smoke from the patient when he was admitted to the hospital. The doctor further testified that the man gave a history of headaches for two weeks prior to his admission and this fact is corroborated by the petitioner himself who testified that he had been having headaches for a period of two or three weeks prior to December 29th, 1936, and that he took aspirin to relieve them. The petitioner also testified that he suffered frequent coughing spells while at work and took olive oil to relieve the coughing. The doctors on both sides testified that hypertensive vascular disease is a condition that is progressive when untreated, and that it usually results in a hemiplegia or in death with or without trauma.

It was the theory of the petitioner's doctors that the coughing spell brought on a slow oozing hemorrhage which culminated in the man's stroke some fifteen minutes later as he stood by his bench in the machine shop.

It was the theory of the respondent's doctors that the violent coughing of a man who suffered from such an advanced degree of hypertension as the petitioner would have brought on a violent hemorrhage, considering the fragile condition of the man's veins and arteries, and his stroke would necessarily have to occur simultaneously with the fit of coughing and the petitioner would be unable to walk up the stairs to the boiler room and then go a distance of some two hundred feet before the stroke would occur, having stopped on the way to inspect a machine.

The respondent, by its attorney, moved for a dismissal on the grounds that it had no notice of accident within ninety days. I find no merit in this contention for the reason that the act does not provide notice of accident but notice of injury.

The meritorious question involved is whether or not the petitioner's present condition was brought on by the inhalation of gas and fumes or whether his condition is the result of the natural and progressive climax of a hypertensive vascular disease. The great weight of evidence leads me to conclude that the petitioner's present condition is the natural

result of this progressive disease. I reach this conclusion for many reasons. In the first place the respondent adduced convincing evidence to indicate that the petitioner was not even in the boiler room on the morning in question. Secondly, the petitioner's testimony that he was overcome by gas and had to grope around to find ventilation and that he stayed in the boiler room in the presence of this gas for ten minutes coughing, choking and gagging, and that he then went up into the nail room where he inspected a machine and that he later walked some two hundred feet before his stroke occurred, stands alone. There is no corroboration of the petitioner's testimony in this respect. *Roach* v. *Yellow Cab*, 6 *N. J. Mis. R.* 386; 141 *Atl. Rep.* 767. Further the petitioner would have the court believe that gas was escaping into an airtight room. The facts are to the contrary as it appears that there was a doorway leading from the boiler room at a higher level, with no door installed in it, so that the doorway was permanently open. It appears further that there were two coal shutes that hung loosely and permitted ventilation. Aside from this there was a window and another sizeable opening with loose boards thrown over it which would permit the escape of gas if it were present. It is also striking that this condition was apparent only to the petitioner and that no one else in the factory, although many of the employes were called, noticed or were aware of any condition of gas or smoke in undue quantities or in any quantity. It is also significant that the petitioner, when he came up from the boiler room was seen by two or more employes and they testified that he looked normal and gave no evidence of having had a violent coughing spell within a few minutes preceding. I, therefore, find that the petitioner was not exposed to coal gas as he alleges.

I further find from the medical evidence that the petitioner has failed to sustain the burden of proving that his condition was the result of exposure to coal gas causing him to cough violently and to choke.

It is conceded on both sides that the petitioner suffered from a pre-existing hypertensive vascular disease. Dr. Harry

H. Satchwell and Dr. Lewis H. Loeser appearing for the petitioner testified that a man suffering from this disease would, in the natural course of events, if untreated, and because of the progressive nature of the disease, either suffer a stroke or die. They testified, further, on cross-examination that it is not uncommon for a person to suffer a stroke while at rest or without any apparent external cause. Dr. Loeser testified that the man's condition could be the result of a slow oozing hemorrhage which began two weeks prior to the alleged accident when the man first began to suffer daily headaches.

We, therefore, have three equally consistent theories as to the cause of the petitioner's present condition. In this state of the proofs the petitioner has not sustained the burden of proving that his condition is the result of sudden and unusual exposure to coal gas. *Nardone* v. *Public Service Electric and Gas*, 113 *N. J. L.* 540; 174 *Atl. Rep.* 745. This case seems to be almost identical with the case of *Ezyske* v. *Waverly Fur Dressing Co.*, 14 *N. J. Mis. R.* 218; 183 *All. Rep.* 902, where this bureau reached a similar conclusion.

For the foregoing reasons I find that the petitioner has failed to sustain the burden of proving that he was exposed to coal gas at his work and I further find that he has not sustained the burden of proving that his condition is the result of this alleged exposure.

It is, therefore, on this 4th day of April, 1938, ordered that the petition be and the same is hereby dismissed.

JOHN J. STAHL,
*Deputy Commissioner.*