New Jersey Department of Labor,
Workmen's Compensation Bureau.

FLORINA SULMONETTI, PETITIONER, v. AMERICAN CY-
ANAMID COMPANY, IMPROPERLY PLEADED CALCO
CHEMICAL, INC., RESPONDENT.

Decided November 12, 1940.

For the petitioner, *Eugene A. Liotta.*

For the respondent, *Gilbert E. Crogan, Jr.*

\*       \*       \*       \*       \*       \*       \*

On January 20th, 1939, Julius C. Sulmonetti met with an accident arising out of and in the course of his employment, which consisted of a fall in the plant shower room when he slipped on a piece of soap while taking his customary shower bath at the close of the day's work—a sanitary and health measure prescribed by the respondent for the benefit of those workers whose employment exposes them to chemicals. The evidence discloses that Sulmonetti thereafter continued at his regular work without any interruption or loss of time until February 10th, 1939; that on February 11th, 1939, his day off, while sitting in a chair in a lawyer's office at Trenton, New Jersey, transacting some private business, he suffered a stroke of apoplexy, requiring his immediate hospitalization at St. Francis Hospital of Trenton; that he was removed to his home in Bound Brook, New Jersey, on the next day and was confined to bed thereafter under the care of Dr. Carmine Falcone

until February 21st, 1939; that because of the gradual retrogression of his condition, he was re-hospitalized on February 21st, 1939—this time at the St. Peter's Hospital, New Brunswick, New Jersey, where he died on March 5th, 1939, from the effects of a cerebral hemorrhage, following a craniotomy performed by Dr. Francis M. Clarke.

The evidence further reveals that the petitioner, Florina Sulmonetti, is the lawful widow of the decedent; that she and her two infant children, Louis Sulmonetti, age fifteen years, and Julius Sulmonetti, age one year, were members of the decedent's household at the time of the accident and death; and that they are total dependents by virtue of *N. J. S. A.* 34:15-13.

While obviously there appears to be no question but that Sulmonetti met with an accident on January 20th, 1939, within the purview and intendment of the Workmen's Compensation act, the petitioner's right to compensation is controverted by the respondent upon the ground that the injuries sustained therein were trivial and inconsequential, neither causing nor accelerating the cerebral hemorrhage which resulted in his death on March 5th, 1939.

The sole question in issue, therefore, is whether the death of Sulmonetti resulted from an accident arising out of and in the course of his employment or was due to natural causes.

The burden of proof rests upon the petitioner to establish her right to compensation. The apposite rule applicable to the present case is clearly and succinctly stated by Mr. Justice Trenchard in *Bryant* v. *Fissell,* 84 *N. J. L.* 72; 86 *Atl. Rep.* 458, "that the burden of furnishing evidence from which the inference can be drawn that the death of an employe was caused by an accident arising out of and in the course of employment rests upon the claimant."

Such burden of proof, however, is not discharged if the evidence is as consistent with the theory that death was due to natural causes, as that it was due to an accident. An award of compensation cannot rest upon imagination, surmise or conjecture, or upon a choice between two views equally compatible with the evidence. The court cannot speculate as to which of several causes might have produced the death of an

injured employe. See *Curran* v. *Newark Gear Cutting Machine Co.,* 37 *N. J. L. J.* 21.

The proofs in this case, in my opinion, fail to establish that Sulmonetti's death was due to the accident on January 20th, 1939. While it is true that the decedent slipped and fell in the shower room on the aforesaid day, I am satisfied by the greater weight of the evidence that he did not strike his head on the floor, but landed upon his buttocks, supported by his out-stretched hand; that he arose immediately from the floor with no signs of injury, and that he repaired to the locker room, dressed, checked out at the medical dispensary without mentioning a single word about the mishap or about any physical complaints; and that he thereupon left the plant for his home. The testimony of the respective parties is in sharp conflict as to the chain of events which took place during the three-week period following the mishap. The petitioner testified that, prior to the accident, her husband enjoyed good health; that upon arriving home on the day of the accident he appeared ill and presented a bruise on his right arm and a lump over the right side of his head; and that, subsequent thereto, he appeared drowsy, suffering from incessant headaches for which he took aspirin constantly in an effort to obtain relief. On the other hand, the respondent produced the time card records, which were received in evidence without objection, indicating that the decedent had worked steadily without the loss of any time from January 20th, 1939, the date of the accident, until February 11th, 1939, the day he collapsed in a lawyer's office in Trenton. Furthermore, Ernest J. Fisher, who was employed by the respondent as Sulmonetti's helper, testified that at no time from January 20th, 1939, to February 10th, 1939, did Sulmonetti complain of headaches, dizziness or drowsiness; that he performed his work in his accustomed skillful manner; and that, from the witness' personal observation during this three-week period, he appeared to be in his usual good state of health. What appears to be a very significant factor as developed in the testimony adduced in behalf of the respondent, was that daily visits were made to the plant clinic and hospital by Sulmonetti at the close of his tour of duty for medical

checkup for cyanosis due to chemical exposure; and that during these daily examinations for the three-week period immediately following the accident, *i. e.,* from January 20th, 1939, to February 10th, 1939, he made no complaints of headaches, dizziness or drowsiness to the examining physician, nurse or other clinic attendants; nor did he mention the occurrence of the accident to anyone connected with the clinic.

A review of the voluminous medical testimony of the various physicians for the respective parties discloses a definite contrariety of opinion as to whether or not there exists any causal relation between the accident of January 20th, 1939, when he slipped and fell in the shower room, and the cerebral hemorrhage from which he died on March 5th, 1939.

\*      \*      \*      \*      \*      \*      \*

In a situation such as this where the opinions of the several medical experts of the respective parties are so widely conflicting, it becomes necessary for me, in order to arrive at a decision, to accept the viewpoint which seems to be the more credible, weighty and logical. In my considered judgment, I feel that the greater weight of the medical testimony preponderates overwhelmingly in favor of the respondent, in that the said accident had nothing to do, in the remotest way, with either causing or precipitating the cerebral hemorrhage from which Sulmonetti died on March 5th, 1939.

To warrant a recovery in the present proceeding, it was incumbent upon the petitioner to prove that Sulmonetti's death was due to a compensable accident and not from natural causes. In *Gilbert* v. *Gilbert Machine Works, Inc.,* 122 *N. J. L.* 533; 6 *Atl. Rep.* (2d) 213, Mr. Justice Heher, in dealing with a similar situation involving a question of causal relation, stated: "To find from these circumstances that the deceased's demise was the result of an accident arising out of and in the course of his employment is to indulge in pure surmise and conjecture. The law places the burden of proof on the petitioner for compensation; and it is not sustained unless the evidence preponderates in favor of the tendered hypothesis. That must be rational inference, *i. e.,* based upon a preponderance of probabilities according to the com-

mon experience of mankind. It is required to be a probable or more probable hypothesis with reference to the possibility of other hypotheses." *Jackson* v. *Delaware, Lackawanna and Western Railroad Co.,* 111 *N. J. L.* 487; 170 *Atl. Rep.* 22; *Kuczynski* v. *Humphrey,* 118 *N. J. L.* 321; 192 *Atl. Rep.* 371; *Manziano* v. *Public Service Gas Co.,* 92 *N. J. L.* 322; 105 *Atl. Rep.* 484.

Also in the cases of *Ezyske* v. *Waverly Fur Dressing Co.,* 14 *N. J. Mis. R.* 218; 183 *Atl. Rep.* 902, upon claim that the employe fell following cold draft which produced an increase in blood pressure causing cerebral hemorrhage, held burden of proof as to accidental injury not sustained in view of medical testimony that the employe had high blood pressure and that the cerebral hemorrhage was due to natural causes.

And in the more recent case of *Hornecker* v. *Brunner & Sons, Inc.,* 17 *N. J. Mis. R.* 368; 9 *Atl. Rep.* (2d) 528, the sole issue involved a question as to the cause of cerebral hemorrhage. The evidence established that the claimant's cerebral hemorrhage was caused by a congenital and pre-existing abnormal condition of the cerebral arteries and veins, which was in nowise aggravated or accelerated by his work, and that he did not suffer an injury as a result of an accident arising out of and in the course of employment within the meaning of the Workmen's Compensation act.

Proof of disability or death overtaking a workman at his work is insufficient, in and of itself, to constitute an accident within the intendment of the statute. An accident cannot be inferred simply from the injury or death. See *Armstrong* v. *Union County Trust Co.,* 14 *N. J. Mis. R.* 648; 186 *Atl. Rep.* 522; *affirmed,* 117 *N. J. L.* 423; 189 *Atl. Rep.* 138.

Upon carefully considering the entire evidence in this case, I am satisfied that the petitioner has failed to sustain the burden of proof in establishing that the death of her husband, Julius C. Sulmonetti, resulted from an accident arising out of and in the course of employment. Accordingly I am constrained to dismiss the petition. I am not convinced that the fall in the shower room on January 20th, 1939, had anything to do, in the remotest way, with his death on March 5th, 1939. While our appellate courts have repeatedly held

that the Workmen's Compensation act is a remedial statute and should be construed liberally in the interest of the workman claiming compensation thereunder (see *Sack* v. *Ocean City,* 125 *N. J. L.* 138; 14 *Atl. Rep.* (2*d*) 517; *Tucker* v. *Frank J. Beltramo, Inc.,* 117 *N. J. L.* 72; 186 *Atl. Rep.* 821; *affirmed,* 118 *N. J. L.* 301; 192 *Atl. Rep.* 62); such liberal construction was never intended to relieve the claimant of his incumbent duty to sustain the burden of proof. See *Jacques Wolf & Co.* v. *Piplin* (*Supreme Court*), 14 *N. J. Mis. R.* 146; 183 *Atl. Rep.* 187. This is a case where human impulses compel one to go the limit to palliate in some small measure the unfortunate circumstances of the present petitioner—widowed and left destitute with two small children, and which make a person regret not being possessed with power enough to believe what seems far from warranted by the evidence in the case.

It is, therefore, * * * ordered that the petition be and the same is hereby dismissed.

JOHN J. STAHL,
*Deputy Commissioner.*