(No. 3418—

DELIA CHOATE, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed December 12, 1940.*

JOSEPH W. KOUCKY, for claimant.

JOHN E. CASSIDY, Attorney General; MAURICE J. WALSH, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

For about eleven years prior to October 20, 1938, claimant was in the employ of respondent as a cook at Chicago State Hospital.

At such institution the interior entrance to the dining room, the bathroom, and the stairway to the basement, is from the main hall. The door to the bathroom and the door to the basement stairway are about two or three feet apart, the bathroom door being closest to the dining room.

Claimant's duties for the day ended at 6:30 P. M. About 6:10 or 6:15 P. M., on said 20th day of October, A. D. 1938, she was ready to go home and was proceeding from the dining room down the hallway, with the intention of going to the bathroom, but inadvertently passed the bathroom door and opened the door leading to the basement steps. The basement light was not burning at the time. Thinking that she was at the bathroom, claimant stepped forward, and fell down the steps, and thereby sustained injuries to her back, as well as to both legs.

She was immediately taken to the institution hospital where she was examined by Dr. Sinai. The next day she was examined by Dr. Scheffler, a member of the institution staff, who bandaged her side and placed a hot pack on her right leg, which was continued for about two or three weeks. Claimant left the hospital on November 25th and returned to her work on December 1, 1938. During all of the time she was incapacitated for work as aforesaid, she was under the care of Dr. Scheffler, and received her regular pay.

Claimant asks compensation for temporary total disability during the time she was incapacitated for work as aforesaid, and also for the permanent loss of fifty per cent (50%) of the use of her right leg, and for the permanent loss of twenty-five per cent (25%) of the use of her left leg.

The Attorney General contends that the accident did not arise out of and in the course of claimant's employment, and that the medical testimony does not show a causal connection between the accident in question and the present condition of the claimant.

With reference to accidents arising out of and in the course of the employment of the employee, Angerstein in his work "The Employer and the Workmen's Compensation Act of Illinois," Section 111, page 240, said:

"Although the Compensation Act provides compensation to employees only for accidental injuries arising out of and in the course of their employment, yet it is not necessary that the employee be in the actual performance of his work. It is well recognized that there are intervals or periods when the employee is not in the actual performance of work, and yet he is in the course of employment, as for example when the employee is ministering to such personal wants as getting a drink, eating his lunch, particularly upon the employer's premises, or resting at proper intervals, or going to a toilet, etc., subject of course to the usual limitations that he does not go to forbidden or improper places upon the premises, or unnecessarily increase the hazard or danger.

"It is the general rule that all such acts by the employee while on the employer's premises as are reasonably necessary to his health and comfort, are incidental to his employment and are contemplated by the employer and the employee as a part of their contractual relation. It is, therefore, the rule that such acts by the employee as eating lunch during the lunch period on the employer's premises, or getting a drink, going to a toilet, protecting himself from excessive cold when at a place provided by the employer, or which the employees customarily use, are incidents of the employment and when accidental injuries occur during such time, the employer is liable for compensation."

The rule announced by Angerstein is supported by numerous decisions of our Supreme Court. *Humphrey* vs. *Ind. Com.*, 285 Ill. 372; *Mt. Olive Coal Co.* vs. *Ind. Com.*, 355 Ill. 222; *Wabash Ry. Co.* vs. *Ind. Com.*, 360 Ill. 192.

In speaking of the same question, our Supreme Court in the case of *Union Starch Co.* vs. *Ind. Com.*, 344 Ill. 77, said:

"Where an employee is injured at a place where he reasonably may be and while he reasonably is fulfilling the duties of his employment or is engaged in doing something incidental to it, he is injured in the course of his employment."

This rule was also recognized and applied in the case of *Wabash Ry. Co.* vs. *Ind. Com.*, 360 Ill. 192.

In the present case the accident in question occurred in the building where claimant was employed, about fifteen or twenty minutes before the end of the day's work; claimant was just getting ready to leave the institution, had left the dining room, and intended to go to the bathroom but inadvertently opened the wrong door and fell down the basement stairway.

We feel that the case clearly comes within the rule as stated by Angerstein, and the aforementioned decisions of our Supreme Court, and that the injury in question arose out of and in the course of claimant's employment.

With reference to the causal connection between the claimant's present condition and the accident in question, it appears from the evidence that claimant is fifty-seven years of age, and weighs 195 pounds; that she is now partially disabled in both legs, and that such disability is permanent; that prior to the accident in question she never sustained an injury to either leg, never had any pain therein or any swelling thereof; and that she satisfactorily performed all of the duties of her position for about eleven years.

The evidence further shows that since the accident she has had pain in her legs, particularly the right leg; that she

has a phlebitis of the right leg; that she has a limitation of motion in both legs; that her legs are swollen most of the time, particularly the right leg; that she feels very stiff and has difficulty in moving about.

In our judgment, the evidence in the record satisfactorily shows a causal connection between the claimant's present condition and the accident of October 20, 1938.

The only testimony in the record as to the extent of claimant's disability, other than that of the claimant, is the testimony of Dr. Field. From his testimony it satisfactorily appears that claimant has sustained the permanent loss of fifty per cent (50%) of the use of the right leg, and the permanent loss of twenty per cent (20%) of the use of the left leg.

Upon consideration of the testimony in the record we find as follows:

That on October 20, 1938 claimant and respondent were operating under the provisions of the Workmen's Compensation Act of this State; that on such date claimant sustained accidental injuries which arose out of and in the course of her employment; that notice of the accident was given to said respondent and claim for compensation on account thereof was made within the time required by the provisions of such Act; that the earnings of the claimant during the year next preceding the injury in accordance with the stipulation of the parties hereto, were $1,065.00 and her average weekly wage was $20.48; that claimant at the time of the injury was fifty-seven years of age; that all necessary first aid, medical, surgical and hospital services were provided by the respondent; that claimant was temporarily totally disabled from the date of her injury as aforesaid to December 1, 1938, to wit, for a period of five and six-sevenths (5 6/7) weeks; that she also suffered the permanent loss of fifty per cent (50%) of the use of her right leg and the permanent loss of twenty per cent (20%) of the use of her left leg.

We further find that claimant is entitled to have and receive from the respondent the sum of $10.24 per week for a period of five and six-sevenths (5 6/7) weeks for temporary total disability, in accordance with the provisions of Paragraph (b) of Section eight (8) of the Compensation Act, and the further sum of $10.24 per week for a period of ninety-five (95) weeks for the permanent loss of fifty per cent (50%) of

the use of her right leg, and the further sum of $10.24 per week for a period of thirty-eight (38) weeks for the permanent loss of twenty per cent (20%) of the use of her left leg;—in accordance with the provisions of Paragraph E-15 of Section eight (8) of such Act.

We further find that claimant has been paid the sum of One Hundred Seven Dollars and Sixty-three Cents ($107.63) for non-productive time, which must be considered as the payment of compensation and deducted from the amount which she is entitled to have and receive as above set forth.

We further find that One Hundred Twelve (112) weeks' compensation, amounting to Eleven Hundred Forty-six Dollars and Eighty-eight Cents ($1,146.88), has accrued to December 12, 1940, and that said sum, less $107.63 heretofore paid to claimant as aforesaid, to wit, the sum of Ten Hundred Thirty-nine Dollars and Twenty-five Cents ($1,039.25), is payable at this time; and the balance of Two Hundred Seventy-five Dollars and One Cent ($275.01) is payable in twenty-six (26) weekly payments of $10.24 each, commencing December 19, 1940, and one final installment of $8.77.

Award is therefore entered in favor of the claimant, Delia Choate, for the sum of Thirteen Hundred Fourteen Dollars and Twenty-six Cents ($1,314.26), payable as follows:

a) The sum of $1,039.25 is payable forthwith (being the amount of compensation which has accrued from October 21, 1938 to December 12, 1940, less the sum of $107.63 heretofore paid to claimant as aforesaid).

b) The sum of $275.01 is payable in twenty-six (26) weekly installments of $10.24 per week commencing December 19, 1940, and one final installment of $8.77.

This award, being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," (Illinois Revised Statutes, 1939, Bar Association Edition, Chapter 127, Pars. 180-181), and being subject also to the terms of an Act entitled "An Act Making Appropriations to the Auditor of Public Accounts for the Disbursement of Certain Monies Until the Expiration of the First Fiscal Quarter After the Adjournment of the Next Regular Session of the General Assembly," approved July 1, 1939 (Session Laws 1939, page 117); and being, by the terms of the first mentioned Act, subject to the

approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Fund in the manner provided by the foregoing Acts.