Slip Op. 10-69

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AMANDA FOODS (VIETNAM) LTD., *et al.*,<br><br>    Plaintiffs,<br><br>    –v–<br><br>UNITED STATES,<br><br>    Defendant,<br><br>    – and –<br><br>AD HOC SHRIMP TRADE ACTION COMMITTEE,<br><br>    Defendant-Intervenor. | Before: Pogue, Judge<br><br>Consol. Court No. 08-00301 |

OPINION AND ORDER

[Remand to Department of Commerce for further consideration of appropriate separate rates for non-individually investigated respondents]

Dated: June 17, 2010

Mayer Brown LLP (Matthew J. McConkey and Jeffery C. Lowe) for Plaintiff Amanda Foods (Vietnam) Ltd.

Thompson Hine LLP (Matthew R. Nicely and Christopher M. Rassi) and Winston & Strawn LLP (William H. Barringer and Valerie S. Ellis) for Consolidated Plaintiffs Ca Mau Seafood Joint Stock Company; Cadovimex Seafood Import-Export and Processing Joint-Stock Company; Cafatex Fishery Joint Stock Corporation; Can Tho Agricultural and Animal Products Import Export Company; Coastal Fisheries Development Corporation; C.P. Vietnam Livestock Co., Ltd.; Cuulong Seaproducts Company; Danang Seaproducts Import Export Corporation; Investment Commerce Fisheries Corporation; Minh Hai Export Frozen Seafood Processing Joint-Stock Company; Minh Hai Joint-Stock Seafoods Processing Company; Ngoc Sinh Private Enterprise; Nha Trang Fisheries Joint Stock Company; Nha Trang Seaproduct Company; Phu Cuong Seafood Processing & Import-Export Co., Ltd.; Sao Ta Foods Joint Stock Company; Soc Trang Aquatic Products and General Import-Export Company; Thuan Phuoc Seafoods and Trading Corporation; UTXI Aquatic Products

Processing Company; Viet Foods Co., Ltd.; Kim Anh Co., Ltd.;
Phuong Nam Co., Ltd.

Tony West, Assitant Attorney General; Jeanne E. Davidson,
Director; Franklin E. White, Jr., Assistant Director, Commercial
Litigation Branch, Civil Division, United States Department of
Justice (Stephen C. Tosini), and, of counsel, Jonathan M.
Zielinski, Senior Attorney, Office of the Chief Counsel for
Import Administration, Department of Commerce, for Defendant
United States.

Picard Kentz & Rowe LLP (Andrew W. Kentz and Nathaniel M.
Rickard)for Defendant-Intervenor Ad Hoc Shrimp Trade Action
Committee.


**Pogue, Judge:** This consolidated action is again before the

court following the initial remand of the final results of the

second administrative review of the antidumping duty order

covering frozen warmwater shrimp from the Socialist Republic of

Vietnam.[1]  Plaintiffs are cooperative non-investigated

respondents in the administrative review who have established

their entitlement to a separate rate.  In the review, the United

States Department of Commerce ("Commerce" or "the Department")

determined Plaintiffs' dumping margins to be equal to the nonzero

rates assigned to Plaintiffs in the investigation underlying this

order, rather than to the weighted average of margins calculated

for the individually-investigated respondents.  All individually-

---

[1] See Amanda Foods (Vietnam) Ltd. v. United States, __ CIT
__, 647 F. Supp. 2d 1368, 1374-75, 1379-82 (2009)("Amanda
I")(remanding Certain Frozen Warmwater Shrimp from the Socialist
Republic of Vietnam, 73 Fed. Reg. 52,273 (Dep't Commerce Sept. 9,
2008)(final results and final partial rescission of antidumping
duty administrative review) ("Final Results")).

investigated respondents' margins were zero or *de minimis*.  In
Amanda I, the court remanded Commerce's decision, directing the
Department to assign to Plaintiffs the weighted average of the
mandatory respondents' rates, or to provide justification, based
on substantial evidence on the record, for using another rate.[2]
Amanda I, __ CIT at __, 647 F. Supp. 2d at 1382.

As explained more fully below, by imputing to cooperative
respondents the behavior of uncooperative respondents, Commerce
has failed to comply with the court's remand order in Amanda I.
The Department has again failed to provide a rational connection
between the facts found and the rates applied.  Accordingly, the
court again remands to Commerce the question of appropriate
antidumping duty rates for Plaintiffs.

**BACKGROUND**

A.   Amanda I

Commerce's choice of assessment rate for cooperative non-
investigated respondents in the second review of this antidumping
duty order is fully chronicled in the court's opinion in Amanda
I, 647 F. Supp. 2d at 1374-75.  Briefly:

---

[2] While some of the court's conclusions are summarized in
the Background section of this opinion, familiarity with the
court's decision in Amanda I is presumed.  All other issues
originally raised by Plaintiffs in this consolidated action have
been dismissed pursuant to stipulation between the parties. (See
Stipulation of Partial Dismissal [Dkt. No. 83]; Order of
Dismissal [Dkt. No. 84].)

> [R]ather than averaging the two mandatory respondents'
> [zero and *de minimis*] rates and using the resulting
> average for the separate rate companies, Commerce
> assigned to the separate rate companies the most recent
> rate that each had received in a prior proceeding.
> Specifically, the Department applied the rate that the
> separate rate companies had received in the original
> investigation, based on sales made prior to the
> imposition of the dumping order . . . .

Id. at 1374 (citing Final Results, 73 Fed. Reg. at 52,275-76).[3]

In Amanda I, the court noted that "[t]he sole reasoning that the Department provided for this decision was that thirty-five companies received margins based on [adverse facts available ("AFA")] and that 'the circumstances of this review are similar to those of the preceding review.'" Id. at 1381 (quoting Final Results, 73 Fed. Reg. at 52,275 and citing Issues & Decision Mem., A-552-802, 2d AR 02/01/06-01/31/07 (Sept. 2, 2008), Admin. R. Pub. Doc. 231 ("I & D Mem.")).

The court found this analysis insufficient, concluding that "there is no basis in the [antidumping] statute for penalizing cooperative uninvestigated respondents due solely to the presence of non-cooperative uninvestigated respondents who receive a margin based on AFA," id. (citing Yantai Oriental Juice Co. v. United States, 27 CIT 477, 487 (2003)), and that "nowhere in the

---

[3] Separate rate companies that were individually examined in the first administrative review of this antidumping duty order were assigned the rate they received in the first review. Final Results, 73 Fed. Reg. at 52,275-76.  However, none of the rates assigned based on rates from the first review are at issue in this case. See *supra* note 2.

record [did] Commerce provide sufficient reasoning linking the evidence to its conclusion that margins . . . established during the period of investigation, prior to the imposition of the antidumping duty order, are 'based on the best available information and establish[] [the relevant] antidumping margins as accurately as possible,'" id. at 1382 (quoting Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States, 268 F.3d 1376, 1382 (Fed. Cir. 2001)).[4]

B.    Remand Results

In its remand redetermination, the Department continues to defend as reasonable its decision "to assign the margin of 4.57 percent, the margin calculated for cooperative separate rate respondents in the underlying investigation, to the separate rate respondents in the instant review with no history of a calculated

---

[4] While the Court of Appeals for the Federal Circuit has noted that the requirement that Commerce use the "best available information" may not always be helpful and unambiguous, see Dorbest Ltd. v. United States, Nos. 2009-1257, 2009-1266, 2010 WL 1931677, at *7 (Fed. Cir. May 14, 2010), and that this requirement may not be used to demand of Commerce more than is expressly required by more specific relevant provisions of the antidumping statute, see id. at *8, it remains the case that, to be supported by substantial evidence, Commerce's determinations must be supported by a rational link to information which may be used to help approximate respondents' actual pricing behavior, and that Commerce does not have discretion to select dumping margins "with no relationship to the respondent's actual dumping margin." F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000).

margin," Final Results of Redetermination Pursuant to Court Remand (Mar. 3, 2010)("Remand Results") at 13, as well as its decision to assign to Minh Hai Joint-Stock Seafoods Processing Company a margin of 4.30 percent, the rate received by this company in the original investigation, based on its own data. See id. at 4, 22.

The Department argues that Section 735(c)(5) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1673d(c)(5)(2006)[5] (the "all-others rate" provision for investigations) – the statutory provision upon which the Department usually relies in establishing dumping margins for cooperative respondents not selected for individual examination in an administrative review[6] – "articulates a preference that the Department avoid zero, *de minimis* rates or rates based entirely on facts available" when it determines the appropriate dumping margins for cooperative uninvestigated respondents. Id. at 14.  Further, Commerce contends that the existence in the record of "evidence of dumped sales in the prior [period of review ("POR")] and instant POR," id. at 15, renders reasonable the agency's choice of dumping

---

[5] Further citation to the Tariff Act of 1930, as amended, is to Title 19 of the U.S. Code, 2006 edition.

[6] See, e.g., Longkou Haimeng Mach. Co. v. United States, __ CIT __, 581 F. Supp. 2d 1344, 1359 (2008)(discussing and upholding this practice as in accordance with the statutory scheme).

margins for Plaintiffs, see id. at 15-18, because "selecting rates from prior segments . . . reasonably reflects the existence of dumping under the order[.]" Id. at 18.

The Department points to four particulars in the record as evidence supporting the dumping margins assigned to Plaintiffs for the POR in question – the fact that two mandatory respondents received rates based on AFA in the first review; transaction-specific above-*de minimis* dumping margins for at least one mandatory respondent in the second review; the existence of uncooperative respondents in the second review; and the fact that some of the subject merchandise entered during the POR came from producers/exporters who were assessed cash deposit rates based on AFA but who nevertheless did not request to be reviewed. Id. at 16-18.

Plaintiffs contend that the Department has failed to comply with the court's order in Amanda I because the margins assigned are not supported by substantial evidence on the record. (See generally Comments on Final Results of Redetermination Pursuant to Ct. Remand on Behalf of [Pls.] ("Pls.' Comments").) Specifically, Plaintiffs argue that Commerce continues to offer as evidence the imputation of dumping to Plaintiffs based on the presence of uncooperative respondents in the first and second reviews, despite the court's holding in Amanda I that this fact alone cannot constitute substantial evidence supporting the

reasonableness of margins assigned to cooperative Plaintiffs. (See Pls.' Comments at 2-4, 6-8.)  With regard to Commerce's reliance on transaction-specific dumping margins found for one of the mandatory respondents, Plaintiffs argue that "Commerce cannot have it both ways; it cannot assign an overall *de minimis* margin to mandatory respondents, yet use individual comparisons from those respondents' margin calculations to justify application of an above-*de minimis* margin to non-mandatory respondents." (Id. at 5.)

## STANDARD OF REVIEW

"The court will sustain the Department's determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law." Jinan Yipin Corp. v. United States, __ CIT __, 637 F. Supp. 2d 1183, 1185 (2009) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

"Substantial evidence" is "such evidence as a reasonable mind might accept to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quotation marks and citations omitted).  "The specific determination [the court] make[s] is whether the evidence and reasonable inferences from the record support [Commerce's] finding." Daewoo Elecs. Co. v. Int'l Union of Elec., Elec., Technical, Salaried & Mach. Workers, AFL-CIO, 6 F.3d 1511, 1520 (Fed. Cir. 1993) (internal quotation

marks and citation omitted).  That is, "[a] factual finding is
supported by substantial evidence when the factfinder could
rationally draw support for the finding from the relevant record
evidence." Penrod Drilling Co. v. Johnson, 905 F.2d 84, 87 (5th
Cir. 1990).  Further, to be supported by substantial evidence,
agency findings must be "reached by reasoned decision-making,
including . . . a reasoned explanation supported by a stated
connection between the facts found and the choice made." Elec.
Consumers Res. Council v. Fed. Energy Regulatory Comm'n, 747 F.2d
1511, 1513 (D.C. Cir. 1984) (citing Burlington Truck Lines, Inc.
v. United States, 371 U.S. 156, 168 (1962)) (quotation marks and
additional citations omitted).

## DISCUSSION

The court first considers the legal premise for Commerce's
remand decision, concluding that the agency's statutory
construction is not reasonable and therefore not entitled to
Chevron deference.[7]  The court then examines the evidentiary

---

[7] To the extent that Commerce's determination depends upon a
particular construction of its statutory authority, the court
first looks to whether "Congress has directly spoken to the
precise question at issue," Chevron, U.S.A. Inc. v. Natural Res.
Def. Council, Inc., 467 U.S. 837, 842 (1984), using traditional
tools of statutory construction. Id. at 843 n.9; see also Timex
V.I., Inc. v. United States, 157 F.3d 879, 882 (Fed. Cir. 1998)
(citation omitted).  "[I]f the text answers the question, that
is the end of the matter." Timex, 157 F.3d at 882 (citations
omitted).  If, after using traditional tools of statutory

bases for the Department's remand decision, concluding that the dumping margins assigned to Plaintiffs on remand are not supported by substantial evidence.

A.   Commerce's Statutory Construction on Remand is Not Entitled to Deference.

No statutory or regulatory provision directly addresses the methodology to be employed when calculating a dumping margin for companies not selected for individual investigation where Commerce limits its examination in an administrative review. Instead, as noted above, Commerce generally relies on the "all others rate" provision governing investigations under the antidumping statute, 19 U.S.C. § 1673d(c)(5). Remand Results at 14 ("Generally we have looked to [19 U.S.C. § 1673d(c)(5)], which provides instructions for calculating the all-others rate in an investigation, for guidance when calculating the rate for respondents we did not examine individually in an administrative

_____

construction, the court cannot conclude that the statute itself answers the question at issue, then Commerce's statutory interpretation is entitled to deference so long as it is reasonable. See United States v. Mead Corp., 533 U.S. 218, 229 (2001); Chevron, 467 U.S. at 843; Pesquera Mares Australes Ltda. v. United States, 266 F.3d 1372, 1382 (Fed. Cir. 2001) ("[S]tatutory interpretations articulated by Commerce during its antidumping proceedings are entitled to judicial deference under Chevron."); Koyo Seiko Co. v. United States, 36 F.3d 1565, 1573 (Fed. Cir. 1994) ("In a situation where Congress has not provided clear guidance on an issue, Chevron requires us to defer to the agency's interpretation of its own statute as long as that interpretation is reasonable.").

review."). <u>See also</u> <u>Final Results</u>, 73 Fed. Reg. at 52,274 (characterizing the Department's practice in this regard in language mirroring that found in 19 U.S.C. § 1673d(c)(5)); <u>I & D Mem.</u> at 18-19 (relying on 19 U.S.C. § 1673d(c)(5) and its accompanying provision in the Statement of Administrative Action to justify choice of separate rate in this case); <u>Longkou</u>, __ CIT __, 581 F. Supp. 2d at 1359 (discussing and upholding this practice as in accordance with the statutory scheme).

When Commerce interpreted this all-others rate provision in its remand determination, it concluded that the provision generally disfavors the use of zero and *de minimis* margins in calculating dumping margins for cooperative uninvestigated companies. <u>Remand Results</u> at 26. Commerce then relied on this interpretation in deciding not to base the dumping margins assigned to Plaintiffs on the zero and *de minimis* margins found for all individually investigated respondents in the second review. <u>Id.</u> ("It is because of the statute's clear preference to avoid using *de minimis*/zero and AFA rates in the [all-others rate] average that we have not used any of these rates in assigning a rate to the non-examined companies.").[8]

_____

[8] <u>See also</u> <u>Remand Results</u> at 14-15 (arguing that 19 U.S.C. § 1673d(c)(5) "articulates a preference that the Department avoid zero, *de minimis* rates or rates based entirely on facts available when it determines the all others rate," and explaining that "the Department [therefore] consistently seeks to avoid the use of total facts available, zero and *de minimis* margins in determining

In reviewing a decision which the agency seeks to justify as compelled or preferred by a particular statutory provision, the court first looks to the text of the statute, to determine whether "Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842. See also Timex, 157 F.3d at 882.

The statutory provision at issue, Section 1673d(c)(5), provides a general rule and an exception:

(A) General rule

> For purposes of this subsection and section 1673b(d) of this title, the estimated all-others rate shall be an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and de minimis margins, and any margins determined entirely under section 1677e of this title.

---

non-selected rates in administrative reviews, in order to implement this statutory preference"); id. at 22-23 ("[T]he statute clearly disfavors the use of *de minimis* or zero margins in the calculation of the 'all-others' average rate in an investigation. . . . As we . . . calculated only zero and *de minimis* rates for the individually examined respondents . . ., we considered the statutory preference to avoid the use of these rates in the average. . . . Therefore, taking guidance from [19 U.S.C. § 1673d(c)(5)] addressing circumstances where the Department calculates zero or *de minimis* rates, . . . rather than using these disfavored rates, we looked to another reasonable method to assign rates to non-individually examined respondents."); (Def.'s Resp. to Pls.' Remand Comments ("Def.'s Resp.") at 5 ("Commerce explained that 19 U.S.C. § 1673d(c)(5), to which Commerce refers for guidance regarding how to assign rates to separate rate companies, expresses a preference for not relying upon rates that are zero, *de minimis*, or based entirely upon facts available. . . . [T]his statutory preference . . . supports Commerce's methodology.")).

(B) Exception

> If the estimated weighted average dumping margins established for all exporters and producers individually investigated are zero or de minimis margins, or are determined entirely under section 1677e of this title, [Commerce] may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated.

19 U.S.C. § 1673d(c)(5)(A) & (B).

By its plain terms, this statutory provision's intended application is to administrative proceedings covered under Sections 1673b and 1673d of Title 19 – that is, to preliminary and final determinations in investigations of sales at less than fair value underlying the imposition of an antidumping duty order. Therefore, the court cannot conclude that "Congress has directly spoken [in this provision or elsewhere in the antidumping statute] to the precise question at issue," Chevron, 467 U.S. at 842 – i.e., the court cannot conclude that Congress has directly addressed the issue of whether Commerce must avoid using zero or *de minimis* dumping margins, to the extent that other rates are available, when calculating dumping margins for cooperative non-individually investigated companies in an administrative review. Accordingly, the court must determine whether Commerce's statutory interpretation is reasonable and therefore entitled to deference. See id. at 843-44. As explained

below, the court concludes that it is not.

Commerce interprets Section 1673d(c)(5) to provide a general congressional preference, applicable both in investigations and administrative reviews, that Commerce avoid using zero or *de minimis* margins to the extent possible when assigning dumping margins to cooperative uninvestigated respondents. See Remand Results at 26.[9]  However, subsection 1673d(c)(5)(B) provides an exception to the preference, expressed in subsection 1673d(c)(5)(A), for excluding zero and *de minimis* margins from the all-others rate calculation.  Subsection (B) provides, *inter alia*, that where, as here, all mandatory respondents receive zero or *de minimis* dumping margins, the rule expressed in (A) does not apply.  Subsection (B) then states that, in such cases, averaging the mandatory respondents' zero and *de minimis* dumping margins may serve as a reasonable method of establishing the all-others rate. 19 U.S.C. § 1673d(c)(5)(B).[10]

---

[9] See also *supra* note 8.

[10] The court notes the Department's characterization that "the statute contemplates that [Commerce] may use an average of the zero, *de minimis* and rates based entirely on facts available" to arrive at an all-others rate in this case pursuant to 19 U.S.C. § 1673d(c)(5)(B). Remand Results at 15.  However, despite the presence of a rate based on AFA assigned to the Vietnam-wide entity in the second review, Final Results, 73 Fed. Reg. at 52,275, the statute states only that "dumping margins determined for the exporters and producers *individually investigated*" may be averaged to arrive at the all-others rate. 19 U.S.C. § 1673d(c)(5)(B) (emphasis added).  Because the margins for all *individually investigated* exporters/producers in the

Thus, while Commerce is correct that the statute disfavors including zero and *de minimis* margins in the all-others rate calculation *when positive non-FA-based rates for individually investigated respondents are available*, 19 U.S.C. § 1673d(c)(5)(A),[11] it is an impermissible construction of this provision to extend its disfavor to situations where, as here, "the estimated weighted average dumping margins established for *all* exporters and producers individually investigated are zero or *de minimis* margins," 19 U.S.C. § 1673d(c)(5)(B) (emphasis added). This extension is impermissible because the statute explicitly provides an exemption from the preference against using zero or

---

instant review were zero or *de minimis*, those portions of the statute which deal with situations where some or all individually investigated companies receive rates based entirely on facts available are not applicable here. The court will therefore refer only to those portions of the statute that deal with zero or *de minimis* margins for mandatory respondents.

[11] See Longkou, __ CIT __, 581 F. Supp. 2d at 1360 (upholding different treatment of mandatory respondents' zero/*de minimis* and above-*de minimis* margins for purposes of calculating the all-others rate pursuant to 19 U.S.C. § 1673d(c)(5)(A) as an "inherent and accepted part" of the statutory scheme). The Department relies on Longkou to support its argument that a statutory preference against the use of zero/*de minimis* margins in calculating the all-others rate supports the reasonableness of Commerce's choice of separate rate in this case. Remand Results at 22-23. However, because in Longkou the Department relied on, and the court construed, subsection (A) of section 1673d(c)(5), rather than subsection (B), the issue presented in Longkou and the holding of that case cannot support the reasonableness of the Department's reliance on subsection (B) – which creates an exception to the rule expressed in subsection (A) – in the case at bar. See Longkou, __ CIT at __, 581 F. Supp. 2d at 1360.

*de minimis* margins in calculating the all-others rate for the situation at issue here. Id.

Simply put, when a statutory provision specifically lists "averaging the [zero and *de minimis*] estimated weighted average dumping margins determined for the exporters and producers individually investigated" as the sole provided example of "a reasonable method to establish the estimated all-others rate" when all mandatory respondents' margins are zero or *de minimis*, 19 U.S.C. § 1673d(c)(5)(B), it is impermissible to interpret this provision as expressing a preference against the use of such methodology in such situations.  This must particularly be the case when the "authoritative expression by the United States concerning the interpretation and application of . . . this Act"[12] expressly states that the allegedly disfavored methodology is in fact "[t]he expected method in such cases." SAA, 1994 U.S.C.A.A.N. at 4201.[13]  In addition, Commerce's

---

[12] 19 U.S.C. § 3512(d) (referring to the Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316 (1994), reprinted in 1994 U.S.C.A.A.N. 4040 ("SAA")).

[13] The Department recognizes that subsection 1673d(c)(5)(B) explicitly lists averaging the mandatory respondents' margins as an example of a reasonable methodology for establishing the all-others rate when all individually-investigated respondents receive zero or *de minimis* margins. See Remand Results at 14-15. However, the Department argues that this language applies only to investigations, not administrative reviews. Id.
    Commerce offers two grounds in attempting to distinguish the circumstances of the instant administrative review from those of

interpretation effectively renders the exception a nullity.  <u>See</u>

<u>Duncan v. Walker</u>, 533 U.S. 167, 174 (2001) ("[A] statute ought,

upon the whole, to be so construed that, if it can be prevented,

no clause, sentence, or word shall be superfluous, void, or

insignificant." (citation omitted)).

Accordingly, Commerce's reliance upon an interpretation of

the statute which reads the preference expressed in subsection

1673d(c)(5)(A) into the exception to that subsection found in

subsection 1673(c)(5)(B), <u>see</u> <u>Remand Results</u> at 22-23, is

_____

an initial investigation.  First, the agency argues that
subsection (B) is intended to apply only to circumstances where
the "expected method" under that subsection would be to average
zero/*de minimis* rates with rates based on AFA, and never solely
to average zero and *de minimis* rates. <u>See</u> <u>Id.</u> at 15.  Second,
Commerce argues that averaging the margins calculated for all
individually investigated companies as the all-others rate is the
"expected method" only for investigations, where no other
potential rates, such as rates from prior segments, would be
available. <u>See</u> <u>id.</u>
     Commerce's first argument in this regard is based on an
erroneous interpretation of the law. <u>See</u> *supra* note 9.  Because
the provision's "expected method" is to average only the rates
calculated for individually investigated companies, nothing
prevents the "expected method" of subsection (B) from resulting
in the averaging of zero and *de minimis* rates found for
individually investigated companies in an underlying
investigation, such as in situations where some uncooperative
*non*-investigated companies receive rates based on AFA. Hence
nothing necessarily distinguishes the circumstances of this
review from the kinds of circumstances to which subsection (B)
was intended to apply.  With regard to Commerce's second
argument, as the court explained in <u>Amanda I</u>, and reiterates
below, the availability of rates from prior segments does not in
itself suffice to support the reasonableness of applying such
rates to pricing behavior in subsequent periods of review, and
therefore does not necessarily bear on the reasonableness of
using section (B)'s expected method in a particular segment.

unreasonable and therefore not entitled to deference. See

Chevron, 467 U.S. at 845.  While section 1673d(c)(5)(A) expresses

a preference for avoiding zero and *de minimis* margins when

calculating the all-others rate for cooperative uninvestigated

respondents, subsection (B) exempts from this preference

situations where, as here, all individually investigated

respondents receive zero/ *de minimis* rates.

Contrary to Commerce's argument, therefore,

Section 1673d(c)(5) does not support Commerce's methodology for

establishing Plaintiffs' dumping margins.  As the court held in

Amanda I, "as a legal matter, Commerce may choose to include or

to exclude the mandatory respondents' zero or *de minimis* margins

in calculating a separate rate," 647 F. Supp. 2d at 1380, as long

as the methodology used and the rates chosen are reasonable, see

id. at 1379.  By categorically excluding the mandatory

respondents' zero and *de minimis* margins in calculating the

separate rate, the methodology used on remand was unreasonable.

A further remand is therefore required.

Moreover, even were Commerce's exclusion of the mandatory

respondents' margins from the separate rate calculation not

categorical, the court could not accept as reasonable, based on

the record here, the dumping margins assigned to Plaintiffs in

this review.  It is to the consideration of that issue that the

court now turns.

B.    Commerce's choice of dumping margins assigned to Plaintiffs
      is not supported by substantial evidence in the record.

Because the record for this review does not contain substantial evidence sufficient to establish a reasonable link between the rates assigned to Plaintiffs and Plaintiffs' pricing behavior during the POR, Commerce's decision in this regard is in any case not reasonable, especially in light of the overriding statutory purpose of accuracy in the calculation of dumping margins. See, e.g., Parkdale, 475 F.3d at 1380 (Commerce must calculate dumping margins "as accurately as possible"); De Cecco, 216 F.3d at 1032 (Commerce does not have discretion to select dumping margins "with no relationship to the respondent's actual dumping margin"); U.S. Steel Corp. v. United States, Slip. Op. 10-28, 2010 WL 1347689, at *19 (CIT Mar. 19, 2010) ("It is well-established that Commerce is required to calculate antidumping duty margins as accurately as possible in each segment of a proceeding." (citing Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1191 (Fed. Cir. 1990))).

The Department points to four areas in the record as evidence in support of the dumping margins assigned to Plaintiffs in this review:

1) the existence of a 25.76 percent rate, based on AFA, for two mandatory respondents in the first review, as "evidence that

dumping has occurred since the investigation of the underlying order," Remand Results at 16 ("Ground 1");

2) the fact that "[a]t least one of the respondents individually investigated had transaction-specific margins that were higher than the 4.57 percent rate," id. ("Ground 2");

3) the fact that "[o]f the 63 exporters covered by the review, 35 exporters did not submit quantity and value questionnaire responses at the beginning stages of the proceeding, despite confirmed receipt of each attempt [to solicit such response]," id. at 16-17, as evidence of continued dumping during the POR, at a rate presumed to be at least equal to 25.76 percent, the AFA rate assigned to unresponsive exporters ("Ground 3"); and

4) the fact that "entry data obtained from U.S. Customs and Border Protection [] shows that exporters from the Vietnam-wide entity entered subject merchandise during the POR for which a cash deposit was paid at the rate of 25.76 percent," id. at 17-18, as evidence "that the cash deposit rate is reflective of the level of actual dumping by these exporters during the POR," because "reviews were not requested by some of these exporters," id. at 18 ("Ground 4").

The court now turns to consider these evidentiary claims.

*1.    Grounds 1, 3 & 4 – Uncooperative Respondents*

Grounds 1, 3 and 4, offered as evidence in support of the dumping margins assigned to Plaintiffs in this review, are all based on evidence of the existence of uncooperative respondents in the first and/or second reviews: Ground 1 refers to the presence of uncooperative respondents in the first review;[14] Ground 3 refers to the presence of uncooperative respondents in the second review; and Ground 4 refers to the presence of uncooperative respondents in the first review who did not request to be reviewed in the second review.[15]

As the court stated in Amanda I, however, "the Department's reference to the existence of . . . non-cooperating companies . . . fails to justify its choice of dumping margin for the cooperative uninvestigated respondents," 647 F. Supp. 2d at 1381, and "does not provide a basis for the Department's use of results from a prior determination with respect to the cooperating companies in the present case." Id. at 1382.

All fully cooperative individually investigated respondents

---

[14] Remand Results at 16 ("[The Department] determined to apply AFA to two mandatory respondents.  As these companies refused to provide the Department with necessary information, the Department was required to resort to facts available, and applied an adverse inference, determining their dumping margins to be 25.76 percent." (citation omitted)).

[15] See Remand Results at 16 (explaining that the 25.76 percent rate was assigned to uncooperative respondents in the first review).

in both the first and second reviews received zero or *de minimis* rates.[16]  Accordingly, when Commerce says that it has "evidence of dumped sales in the prior POR and instant POR," Remand Results at 15, it is referring to the *presumption* of dumping with regard to the uncooperative respondents in the first and second reviews.[17]

But the presumption that uncooperative respondents engaged in dumping during the POR is just that – a presumption.  Because Commerce does not actually possess accurate information with respect to such companies' pricing behavior during the POR, the agency may presume that margins from prior segments constitute "the most probative evidence of current margins because, if it were not so, the [affected respondent], knowing of the rule, would have produced *current* information showing the margin to be less." Rhone Poulenc, 899 F.2d at 1190 (emphasis in original).[18]

_____

[16] Final Results, 73 Fed. Reg. at 52,275; Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam, 72 Fed. Reg. 52,052, 52,054 (Dep't Commerce Sept. 12, 2007) (final results of the first antidumping duty administrative review and first new shipper review).

[17] When respondents fail to cooperate, Commerce presumes the existence of a positive dumping margin for such companies in order to encourage the submission of accurate information with regard to their pricing behavior during the POR. Rhone Poulenc, 899 F.2d at 1190-91.

[18] See also, e.g., Gallant Ocean (Thailand) Co. v. United States, No. 2009-1282, 2010 WL 1508198 (Fed. Cir. Apr. 16, 2010) ("An AFA rate must be 'a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase inteded as a deterrent to non-compliance.'  The purpose of the AFA rate 'is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or

In the case at bar, however, Commerce, by limiting its
examination pursuant to 19 U.S.C. § 1677f-1(c)(2)(B), has
expressly refused to accept current information from the
cooperative non-investigated separate rate companies.  It follows
that the presumption that margins established in the underlying
investigation are most probative of current dumping margins
cannot be justified on the ground that it encourages the
submission of more accurate information.[19]  A presumption used to
encourage some companies to submit more accurate information may
not reasonably be transposed onto companies which are expressly
prevented from submitting more accurate information.[20] See Rhone

---

uncorroborated margins.'" (emphasis omitted)(quoting De Cecco,
216 F.3d at 1032)).

[19] See also SKF USA Inc. v. United States, __ CIT __,
675 F. Supp. 2d 1264, 1276 (2009) ("Although 19 U.S.C. § 1677e(b)
does not expressly state that Commerce may not adversely affect a
party to a proceeding based upon another interested party's
failure to cooperate, a construction permitting such an absurd
result makes a mockery of any notion of fairness.  In the
specific context of the antidumping laws, a party that did not
fail to meet its obligation to cooperate, as imposed by
§ 1677e(b), is entitled by § 1675(a) and related provisions of
the antidumping law to have its margin determined accurately and
according to the relevant information on the record of the
administrative review."); id. at 1277 (admonishing Commerce for
creating a situation where a party may obtain "a margin or
deposit rate[] that is less favorable than that which would have
resulted if it had cooperated fully, even though Commerce never
found that the party did not cooperate fully as required by
§ 1677e(b)" (internal quotation marks and citation omitted)).

[20] While Commerce argues that, because it "did not attribute
AFA rates to the non-individually examined respondents," Remand
Results at 22, its separate rate determination is not tantamount
to penalizing cooperative respondents for the non-cooperation of

Poulenc, 899 F.2d at 1191 (when agency presumes margins from prior segments to be the best information regarding current margins for uncooperative respondents, "since the presumption is rebuttable, it achieves th[e] [] goal [of encouraging cooperation] without sacrificing the basic purpose of the statute: determining current margins as accurately as possible").

Moreover, a rebuttable presumption with respect to the margins for some companies may not by itself serve as substantial evidence supporting the accuracy of margins assigned to wholly unrelated companies. See, e.g., Routen v. West, 142 F.3d 1434, 1439 (Fed. Cir. 1998) ("This court has never treated a presumption as any form of evidence." (citing A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1037 (Fed. Cir. 1992) ("[A] presumption compels the production of [a] minimum quantum of evidence from the party against whom it operates, nothing more. In sum, a presumption is not evidence." (citations omitted)); Del Vecchio v. Bowers, 296 U.S. 280, 286 (1935) (a presumption "cannot acquire the attribute of evidence in the claimant's favor"); N.Y. Life Ins. Co. v. Gamer, 303 U.S. 161, 171 (1938) ("[A] presumption is not evidence and may not be given

_____

others, id., in actuality the Department's treatment of the remaining Plaintiffs – essentially assigning a margin equivalent to the highest prior margin available – appears to the court to be no different from how it normally treats willfully non-cooperative companies. See, e.g., Rhone Poulenc, 899 F.2d at 1190-91.

weight as evidence."))). <u>See also</u> <u>Wilner v. United States</u>, 24 F.3d 1397, 1411 (Fed. Cir. 1994) ("Presumptions merely impose '*on the party against whom [they are] directed* the burden of going forward with evidence to rebut or meet the presumption . . . .'" (emphasis added) (quoting Fed. R. Evid. 301)).

Because Commerce's Grounds 1, 3 and 4 are all based exclusively on presumptions applicable only to the parties against whom they are made, these grounds cannot constitute substantial evidence to support Commerce's choice of dumping margins for Plaintiffs in the second review.

*2.    Ground 2 – Transaction-Specific Margins*

Second, with regard to transaction-specific, above-*de minimis* margins found in the course of investigating the mandatory respondents, suffice it to say that, if the presence of these transaction-specific margins failed to justify assigning an overall above-*de minimis* rate for the companies whose data they embody,[21] then they certainly cannot serve to do so for the

---

[21] The court notes that the dumping margins for the individually investigated respondents in this review were 0.00 and 0.01 percent. <u>Final Results</u>, 73 Fed. Reg. at 52,275.  Thus whatever transaction-specific dumping may have been engaged in by the individually investigated respondents, Commerce seeks to have this data justify the imposition of 4.30 or 4.57 percent dumping margins for Plaintiffs for the entire POR, notwithstanding the fact that these transaction-specific margins were evidently not significant enough to raise the overall dumping margins of the companies whose actual data they represent above the barest of possible minimums.

remaining cooperative companies.

## CONCLUSION

For all of the foregoing reasons, the court concludes that Commerce's argument that "selecting rates from prior segments to apply to the nonselected companies in this review implements the statute's preference to avoid zero/*de minimis* and facts available margins," Remand Results at 18, is based on an unreasonable interpretation of the statute, and that the agency's finding that doing so "reasonably reflects the existence of dumping under the order [by Plaintiffs during the POR]," id., is not supported by substantial evidence on the record. Accordingly, the 4.57 percent and 4.30 percent rates assigned to Plaintiffs are unsupported.

On remand, therefore, Commerce must employ a reasonable method, which may "includ[e] averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated," 19 U.S.C. § 1673d(c)(5)(B). Further, Commerce must assign to Plaintiffs dumping margins for the second POR which are reasonable considering the evidence on the record as a whole; to do so, Commerce may reopen the evidentiary record if need be.[22]

---

[22] To the extent that the Department finds that the record does not currently contain sufficient evidence to support the reasonable accuracy of dumping margins for Plaintiffs during the POR, the court notes that neither Petitioner nor the Plaintiffs

Therefore, this matter is remanded to the agency for further consideration in accordance with this opinion. See 19 U.S.C. § 1516a(c)(3).  Commerce shall have until ninety (90) days from the date of this Order and Opinion to complete and file its remand redetermination.  Plaintiffs shall have until thirty (30) days from that filing to file comments.  Defendant and Defendant-Intervenors shall have until fifteen (15) days after Plaintiffs' comments are filed to file any reply.

It is **SO ORDERED.**

        /s/ Donald C. Pogue
        Donald C. Pogue, Judge

Dated:     June 17, 2010
           New York, N.Y.

---

object to reopening the evidentiary record. I & D Mem. at 16–17 ("If the Department elects not to use the mandatory respondents' calculated rates to assign a separate rate, the [separate rate] Respondents [] argue that the only alternative option is for the Department to reopen the record and allow the [separate rate] Respondents to supplement the record with company-specific, count-size information as a reliable source for calculating the separate-rate margin based on the average unit value ("AUV") to estimate U.S. price."); id. at 17 ("Petitioner would not be averse to reopening the record for the Department to determine the separate-rate margin based on count-size specific AUV's reported by [separate rate] Respondents.").